IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EQUAL EMPLOYMENT          §
OPPORTUNITY COMMISSION,   §
                          §
            Plaintiff,    §
                          §
VS.                       §        Civil Action No. 3:22-CV-1807-D
                          §
SKYWEST AIRLINES, INC.,   §
                          §
            Defendant.    §

MEMORANDUM OPINION
AND ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") and intervenor-plaintiff Sarah Budd ("Budd") (collectively, "plaintiffs") bring this action against defendant SkyWest Airlines, Inc. ("SkyWest") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and Title I of the Civil Rights Act of 1991, alleging claims for a hostile work environment and retaliation. SkyWest moves for summary judgment. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Budd, a female, began her tenure with SkyWest in Utah in January 2007.[1]  After working there for about 12 years, Budd transferred to Texas and began working for SkyWest

---

[1]In deciding SkyWest's motion for summary judgment, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

as a Parts Clerk at Dallas-Fort Worth International Airport ("SkyWest DFW") on August 22, 2019.

Plaintiffs allege that, while Budd was working at SkyWest DFW, she was subjected to sexual harassment, including "crude sexual comments, jokes, gestures, and mimed assaults directed at [her]," "explicit comments about [her] body, speculation about what sexual positions she may enjoy, and suggestions or requests to perform demeaning sex acts with [her]," and a suggestion from Dallin Hanson ("Hanson"), the supervisor of another department, that she engage in prostitution while on a work errand. Compl. ¶ 20. The complaint also alleges that remarks made in Budd's presence—including "comments making light of rape, suggesting engaging in rape, or arguing that rape victims were lying for attention"—contributed to the creation of a hostile work environment. *Id.* ¶ 21.

On September 4, 2019—only nine workdays after transferring to SkyWest DFW—Budd made a verbal report to her direct supervisor, Parts Clerk Manager Dustin Widmer ("Widmer"), about behaviors that made her uncomfortable. Widmer, who was based in Oklahoma City, was visiting SkyWest DFW on his usual monthly trip, and this was the first time he and Budd had met in person. Budd informed Widmer that her coworkers were making sexual jokes, that she felt singled out as a new employee and a young woman in a workplace otherwise full of men, and that she did not feel "safe." D. App. (ECF No. 49) at 23-25. Widmer did not ask her for additional details; he told her to let him know "if things [got] worse." *Id.* They both allegedly shared the concern that escalating Budd's complaint could place an even larger target on her back.

Budd also believes that, at some point during her employment at SkyWest DFW, she may have mentioned the "locker room type environment" among her coworkers to Widmer's supervisor, Parts General Manager Nikki Farrer Mitchell ("Mitchell").

Between October 24, 2019 and December 3, 2019, Budd took an unpaid medical leave of absence from SkyWest, allegedly on account of the harm to her mental health "done by the pervasive atmosphere of sexual harassment." Compl. ¶ 23. In her application for leave, she listed specific conditions as the medical facts underlying her request and indicated that she "need[ed] eval/therapy." Ps. App. (ECF No. 67-1) at 151-52.[2]

The day she returned to work from medical leave, Budd allegedly witnessed "upsetting gestures and sexual jokes about a candy jar dressed as a woman," including several members of her department humping the candy jar and making ongoing comments about rape and raping the candy jar. Compl. ¶ 24. Plaintiffs allege that the word "rape" was spoken by various SkyWest DFW employees over 30 times that day. As a result, plaintiffs allege, Budd "hysterically cr[ied] in the bathroom." *Id.*

On December 11, 2019 Budd emailed Widmer, Mitchell, and Vice President of Maintenance Bill Dykes requesting to move to a part-time schedule, citing the "salacious environment (which has already been expressed)" as one reason for her request. *Id.* ¶ 25; D.

---

[2]The court is not specifying these conditions because they are disclosed in a sealed filing, and including them in this publicly available decision would require that the court implement a sealing protocol that would otherwise be unnecessary for the balance of the memorandum opinion and order. The parties are aware, however, of the conditions that Budd disclosed.

App. (ECF No. 49) at 16-18, 100, 121.  Mitchell forwarded this email to Kellie Dehais ("Dehais"), Employee Relations Manager in SkyWest's Human Resources department.  A few days later, on Saturday, December 14, 2019, Budd again emailed Widmer to complain about her coworkers' behavior, reporting specific instances of alleged inappropriate conduct and harassment and including a narrative of the incident involving the candy jar.  Widmer allegedly replied that Budd could either work her assigned schedule or apply for leave; otherwise, she could not continue to work at SkyWest DFW.  On Monday, December 16, 2019 Widmer forwarded Budd's email to Dehais and also texted Dehais to make her aware of the email.

On that same day, December 16, 2019, Budd filed a formal complaint about the alleged harassment through SkyWest's Human Resources portal.  Dehais contacted Budd the following day, and Budd identified a number of her coworkers by name as having engaged in the harassing behavior.  Budd began paid administrative leave effective immediately.

After Budd went on leave, Dehais interviewed several SkyWest employees, "some of whom corroborated Budd's claims by confirming sexually inappropriate jokes in the workplace" and her account of the candy jar incident.  Compl. ¶ 29; *see* D. App. (ECF No. 49) at 104-07.  But Dehais was apparently unable to corroborate the other allegations made in Budd's December 14 email to Widmer or her December 16 formal complaint.  Dehais' investigation ended on or about February 5, 2020, and she ultimately recommended formal discipline for a few employees involved in the candy jar incident and mandatory sexual harassment training for all SkyWest DFW employees.

- 4 -

Plaintiffs allege that, as of late May 2020, Budd remained on leave and had not received an update on the status of the investigation or on the date she could return to work. Budd emailed Dehais on May 21, 2020 to request an update. Dehais informed Budd that the investigation had concluded but that Budd could not return to work until all SkyWest DFW employees had completed sexual harassment training. The training was apparently delayed due to the COVID-19 pandemic. Plaintiffs allege that Dehais did not inform Budd of any other corrective action that had already been taken.

Budd resigned from her position at SkyWest on May 30, 2020, taking SkyWest up on a COVID-19 voluntary early retirement option, which offered early retirement benefits to any qualified employee who opted in between April 6, 2020 and May 31, 2020. This early retirement plan provided retiree travel benefits but not continued income, as did the traditional retirement plan. Plaintiffs allege that Budd "felt compelled to resign" because SkyWest "failed to return her to work and ceased to communicate with her about any reasonably specific date that she could expect to safely return." Compl. ¶ 32.

Before resigning, Budd filed a Charge of Discrimination with the EEOC on May 11, 2020. The EEOC then timely filed this lawsuit against SkyWest, alleging Title VII hostile work environment and retaliation claims. Budd intervened in the suit. SkyWest now moves for summary judgment. The court is deciding this motion on the briefs, without oral argument.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovants must go beyond their pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovants' failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovants fail to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns first to plaintiffs' hostile work environment claim.

A

To establish a Title VII claim for a sexually hostile work environment based on conduct of a non-supervisor,[3] plaintiffs must prove that: (1) Budd is a member of a protected

---

[3]In its brief, SkyWest discusses whether Hanson, the Maintenance Supervisor, should be considered a "supervisor" for purposes of the hostile work environment analysis. But because plaintiffs "allege that Budd experienced a hostile work environment caused by multiple coworkers and a non-supervisor managerial employee" and concede that "the

class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *See EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007) (citations omitted).

SkyWest points to the absence of evidence to establish either component of the fifth element: (1) whether SkyWest knew or should have known of the harassment, and (2) whether it failed to take prompt remedial action. The court considers each component in turn.

## B

## 1

An employer's knowledge of harassment may be actual or constructive. *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998). "An employee can show actual notice by proving that she complained to higher management." *Contreras v. Waffle House, Inc.*, 2002 WL 1477442, at *8 (N.D. Tex. July 9, 2002) (Solis, J.) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 478 (5th Cir. 1989)). The employer has actual notice of the harassment "if a person within the organization who has the 'authority to address the harassment problem' or an 'affirmative duty' to report harassment learns of the harassment in question." *Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022) (quoting *Williamson*, 148 F.3d at

---

appropriate legal framework is that used for coworker harassment," Ps. Br. (ECF No. 65) at 16, the court assumes that the non-supervisor harassment framework applies.

466).  Several circuits have indicated that, in making a report, a plaintiff is not required to include "magic words"—such as "sex," "sexual," or "harassment"—for a person with authority to be deemed to have learned of the harassment.  *See, e.g.*, *Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 964 (9th Cir. 2009); *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006); *Olson v. Lowe's Home Ctrs. Inc.*, 130 Fed. Appx. 380, 391 n.22 (11th Cir. 2005) (unpublished); *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000).

Alternatively, a plaintiff can "demonstrate constructive notice by 'showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge.'" *Contreras*, 2002 WL 1477442, at *8 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982)).  "If the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes, it is unreasonable not to have done so, and there is constructive notice." *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999) (citing *Williamson*, 148 F.3d at 465; *Waltman*, 875 F.2d at 478)).  And when "the appropriate persons within th[e] enterprise"—i.e., individuals "with remedial power over the harasser"—knew or should have known of the harassment, constructive knowledge can be imputed to the employer. *Id.*

2

SkyWest contends that plaintiffs have failed to show that SkyWest had actual or constructive knowledge of the harassment until December 14, 2019.  Plaintiffs, on the other hand, maintain that SkyWest had knowledge as of September 4, 2019.

Plaintiffs have presented sufficient evidence for a reasonable jury to find that SkyWest had actual knowledge of the harassment as of September 4, 2019. Budd testified in her deposition that, on September 4, 2019, she informed Widmer, her direct supervisor and a member of SkyWest management, that individuals at SkyWest DFW "were making sexual jokes" and saying things that made her "uncomfortable," and that she "[didn't] feel safe." Ps. App. (ECF No. 66-1) at 30. Plaintiffs point to Widmer's deposition testimony, in which he stated that Budd attributed the problematic behavior to "a male-dominated industry" and stated, "if [the situation] doesn't settle down or escalates, then [he] would report it to HR," *id.* at 57-58, as indicating that he understood Budd's complaint to concern sexually harassing behavior that he had an obligation to report to higher company authorities. A reasonable jury could find from this evidence that SkyWest had actual notice of the harassment as of September 4, 2019 on the basis that Budd had complained in an adequately specific manner, including by mentioning "sexual"-related behavior and her belief that the behavior was a product of a "male-dominated industry" to a person with authority to address the harassment.

Alternatively, plaintiffs have also presented sufficient evidence for a reasonable jury to find that SkyWest had actual knowledge of the harassment as of December 2019. In particular, they cite Budd's December 11, 2019 email to Widmer and Mitchell, which Mitchell forwarded to Dehais, in which Budd requested a part-time schedule due, in part, to "the salacious environment (which has already been expressed)," as well as Budd's December 14, 2019 email to Widmer, which he forwarded to Dehais, specifically identifying and quoting several alleged perpetrators of the harassment. Ps. Br. (ECF No. 65) at 20.

Plaintiffs also cite Budd's December 16, 2019 formal complaint submitted through the SkyWest Human Resources portal. Ps. App. (ECF No. 66) at 136-38. This evidence, viewed favorably to plaintiffs as the nonmovants, is sufficient to enable a reasonable jury to find that SkyWest had actual notice of the harassment as of at least one of these dates in December 2019.

3

Furthermore, plaintiffs have presented sufficient evidence for a reasonable jury to find that SkyWest had constructive knowledge of the harassment. As proof that a person "with remedial power over the harasser[s]" knew or should have known of the harassment, they point to deposition testimony indicating that Hansen, the Maintenance Manager, was present when violent or explicit remarks were made by his subordinates, and that he sometimes personally participated in harassing behavior. Because he was the direct supervisor of all of Budd's other alleged harassers and therefore had the power to report or discipline them, this evidence of Hansen's awareness of their behavior could support a reasonable jury's finding that SkyWest had constructive knowledge of the harassment. *See Sharp*, 164 F.3d at 930 (when "the appropriate persons within th[e] enterprise"—i.e., individuals "with remedial power over the harasser"—knew or should have known of the harassment, constructive knowledge can be imputed to the employer).

Plaintiffs have also presented evidence that would enable a reasonable jury to find that the harassing behavior was sufficiently "open and pervasive" as to give SkyWest constructive knowledge. Budd's deposition testimony indicates that her alleged

harassers—composed of approximately three-quarters of the individuals in her department—engaged in frequent and open conversations of a sexual nature, mimed rape, made sexually inappropriate jokes, and engaged in other sexually inappropriate behavior in public areas of SkyWest DFW's facility. Plaintiffs also point to a Human Resources interview of a Maintenance department employee, who stated that use of "vulgar language," which he felt would have caused outsiders to the department to "most likely be offended and be very uncomfortable," was so ubiquitous at the facility that he simply "[didn't] 'hear' it anymore." Ps. App. (ECF No. 66) at 142. This evidence further supports the conclusion that there is a genuine issue of material fact whether SkyWest had constructive knowledge of the harassment: it is proof that would enable a reasonable jury to find that, "had [SkyWest] but opened its corporate eyes," it would have known of the harassment. *Sharp*, 164 F.3d at 930.

## C

The court considers next whether a reasonable jury could find that SkyWest failed to take prompt remedial action.

### 1

When an employer, "once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, [it] may avoid Title VII liability." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004) (citation omitted). "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.* (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)). Whether the employer has taken prompt remedial action is a fact-specific inquiry, and "not

every response by an employer will be sufficient to discharge its legal duty." *Skidmore*, 188 F.3d at 615 (quoting *Waltman*, 875 F.2d at 479); *see also Williams-Boldware v. Denton County*, 741 F.3d 635, 640 (5th Cir. 2014). "Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Skidmore*, 188 F.3d at 615-16 (quoting *Waltman*, 875 F.2d at 479). "Employers are not required to impose draconian penalties upon the offending employee in order to satisfy this court's prompt remedial action standard." *Williams-Boldware*, 741 F.3d at 640 (citation omitted).

2

SkyWest contends that plaintiffs have failed to show that, upon receiving notice of the alleged sexual harassment, SkyWest did not take prompt remedial action. In particular, SkyWest cites evidence that, "once notified of the alleged sexual harassment through Ms. Budd's email to Mr. Widmer on December 14, 2019 and her formal complaint submitted via SkyWest's online portal on December 16, 2019, a formal investigation into the allegations was initiated the same day," and that, "per SkyWest's policy, Ms. Budd was placed on a paid administrative leave, effective immediately, while SkyWest conducted its investigation[.]" D. Br. (ECF No. 48) at 29 (emphasis in original). SkyWest maintains that its decision to immediately place Budd on leave was a sufficiently prompt response reasonably calculated to halt the harassment while SkyWest conducted its investigation.

Plaintiffs, however, focus on other evidence. Although they do not contest that SkyWest took the actions on which it relies, plaintiffs cite evidence that they contend

constitutes a failure by SkyWest (1) to act at all in response to Budd's September 4, 2019 complaint to Widmer and (2) to follow through with its investigation of Budd's December 2019 complaints in a thorough and timely manner. Based on the evidence on which plaintiffs rely, the court concludes that plaintiffs have demonstrated a genuine issue of material fact as to whether SkyWest failed to take prompt remedial action. Despite the fact that a reasonable jury could find in SkyWest's favor, it could also find that SkyWest's overall response was not reasonably calculated to end the harassment in question.

First, plaintiffs point to SkyWest's Company Policy Manual and Dehais' record of a December 18, 2019 phone conversation with Widmer as evidence that, under SkyWest policy, Widmer had a duty to immediately report Budd's September 4, 2019 complaint to Employee Relations and failed to do so, and that SkyWest consequently took no action in response to her complaint. A reasonable jury could find that, if Budd's September 4, 2019 complaint constituted actual or constructive notice of harassment, SkyWest failed to take prompt remedial action in response to it.

Second, plaintiffs point to Dehais' conversations with various SkyWest DFW employees in January and February 2020 as evidence that SkyWest's ultimate investigation "was not targeted to identify harassers or specific harassing conduct and therefore not 'reasonably calculated to end the harassment.'" Ps. Br. (ECF No. 65) at 28. As plaintiffs posit, these records indicate that Dehais did not interview every person named in Budd's complaints, may not have asked for specifics when several individuals confirmed that sexually explicit behavior and language were pervasive at the facility, and focused primarily

- 13 -

on just one of Budd's alleged incidents of harassment. Based on this evidence, a reasonable jury could find that SkyWest's investigation was not reasonably calculated to end the alleged harassment.

Third, plaintiffs point to Dehais' investigation records and deposition testimony as evidence that, in February 2020, SkyWest recommended mandatory sexual harassment training for all SkyWest DFW employees but failed to promptly carry out this training. The record indicates that Dehais may have originally planned for the training to take place by February 2020, because she stated in a January 20, 2020 telephone call to Budd that she anticipated that Budd's administrative leave would last approximately two weeks longer. But the record also shows that SkyWest did not actually conduct this training until early 2023—three years after Dehais concluded her investigation—citing the COVID-19 pandemic as the reason for the delay. Considering Dehais' statement that the investigation concluded around the first week of February 2020—at least a month before the outbreak of the COVID-19 pandemic—and the fact that SkyWest could and regularly did conduct computer-based harassment training even before the pandemic, a reasonable jury could find that SkyWest's delay in carrying out the training constitutes a failure to take prompt remedial action concerning Budd's complaints.

Fourth, plaintiffs point to evidence that the disciplinary action SkyWest allegedly did take against three employees was at least partially ineffective, because one of the employees who was supposedly disciplined testified that he had never been notified that he was subject to discipline. As with plaintiffs' other proffered evidence, a reasonable jury could find that

SkyWest's failure to notify an employee that he was being disciplined in connection with Budd's harassment allegations constitutes a failure to carry out prompt remedial action.

## D

Because plaintiffs have designated specific facts demonstrating that there is a genuine issue of material fact for trial as to all components of the only contested element of their hostile work environment claim, the court holds that SkyWest is not entitled to summary judgment dismissing this claim.

## IV

The court turns next to plaintiffs' retaliation claim.

## A

To establish a Title VII retaliation claim, the plaintiff must show "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks and citation omitted). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)). Complaining about behavior that the employee reasonably believes violates Title VII constitutes protected activity. *See Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020). An "adverse employment action" is an action that a reasonable employee would find

materially adverse, such that it might dissuade her from engaging in protected activity, like making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

SkyWest contends that it is entitled to summary judgment as to plaintiffs' retaliation claim because plaintiffs have proffered no evidence indicating that Budd suffered an "adverse employment action." Plaintiffs, on the other hand, maintain that Budd suffered an "adverse employment action" when SkyWest (1) subjected her indefinitely to paid administrative leave and (2) forced her to resign—i.e., constructively discharged her. The court addresses each of these contentions in turn.

B

The court turns first to the question whether a reasonable jury could find that Budd suffered an adverse employment action.

1

In some circumstances, a paid leave of absence from work can constitute an adverse employment action. *See Burlington N.*, 548 U.S. at 68; *McCoy v. City of Shreveport*, 492 F.3d 551, 558, 560 (5th Cir. 2007). Because allegedly retaliatory actions must be "viewed in context," the court must conduct a fact-specific inquiry to determine whether a paid leave of absence is an adverse employment action. *McCoy*, 492 F.3d at 560. "[T]he mere fact that [a plaintiff] was placed on *paid* administrative leave does not necessarily mean that she did not suffer an adverse employment action." *Id.* at 560 (emphasis in original); *see Katz v. Wormuth*, 2023 WL 7001391, at *7 (5th Cir. Oct. 24, 2023) (suspending an employee under

- 16 -

investigation was not in itself an adverse employment action, but employer's prolonging of suspension by repeatedly adding new grounds for investigation presented a triable question whether an adverse employment action had occurred).

2

Plaintiffs point to evidence that elucidates the circumstances of Budd's administrative leave. Dehais' investigation records indicate that Budd was placed on leave two days after she submitted her formal complaint to SkyWest. Plaintiffs also cite evidence that Budd was never given a definite return-to-work date and received only one (ultimately quite incorrect) update in the course of five months concerning when she could return. These records also reflect Budd's May 21, 2020 request for an update on the investigation, which could indicate that she had a desire to return.

On the other hand, the record indicates that it was SkyWest policy to place employees on leave when an investigation into a claim of sexual harassment was needed, and that Budd preempted that policy by indicating that "she did not want to work and would not return to work until an investigation was complete." D. App. (ECF No. 49) at 58-59, 123. The record also shows that Budd ultimately took SkyWest's COVID-19 early retirement option and never returned to work. And Budd's EEOC Charge of Discrimination, filed on May 11, 2020—ten days before Budd requested an update on the investigation from Dehais—states: "I have/plan to take early retirement," D. App. (ECF No. 49) at 86, which could enable a reasonable jury to find that, by that point, she had no desire for reinstatement. And the record does not indicate that SkyWest would have refused to reinstate her had she continued

- 17 -

on leave until the harassment training was completed.

Some evidence on this point favors plaintiffs and some favors SkyWest.  But at the summary judgment stage, what matters is that plaintiffs have introduced sufficient evidence for a reasonable jury to find that Budd's paid administrative leave was an adverse employment action.  For example,[4] a reasonable jury could find that, regardless of how Budd's administrative leave was instigated, a reasonable employee might be dissuaded from engaging in protected activity if subjected to leave of such indefinite duration, because such uncertainty could cause the employee to experience significant emotional distress and could also negatively affect her chances for future advancement within the company.

C

The court turns next to the question whether a reasonable jury could find that Budd was constructively discharged.

1

"In order to establish a prima facie case of retaliation based on constructive discharge, [a plaintiff] must prove that working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." *Katz*, 2023 WL 7001391, at *8 (quoting *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 439-40 (5th

---

[4]"When this court denies rather than grants summary judgment [with respect to a particular issue], it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

Cir. 2005) (internal quotation marks and citation omitted)); *see McCoy*, 492 F.3d at 557 (citation omitted) ("A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."). To determine whether such conditions existed, the court considers whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001); *Katz*, 2023 WL 7001391, at *8. "This inquiry is an objective, 'reasonable employee,' test under which [the court] ask[s] 'whether a reasonable person in the plaintiff's shoes would have felt compelled to resign.'" *McCoy*, 492 F.3d at 557 (quoting *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004)).

2

    Plaintiffs point to evidence that Budd suffered a "total reduction in job responsibilities" when she was placed on administrative leave; that her "continued but unanswered complaints" about the sexually hostile work environment "added to the intolerability of her working conditions," Ps. Br. (ECF No. 65) at 42; and that she received an offer of early retirement.

    The court holds that a reasonable jury could not find that Budd was constructively discharged.

First, it appears that Budd took administrative leave at her own insistence. And although Dehais informed Budd that she would remain on leave until in-person sexual harassment training was conducted, plaintiffs have presented no evidence that SkyWest would have forbidden Budd from returning to work had she explicitly requested to do so, given that Budd was not herself under investigation.

Second, plaintiffs point to no evidence indicating that any alleged failure by SkyWest to respond to Budd's complaints was calculated to encourage her resignation. Nor do plaintiffs cite evidence that contradicts SkyWest's contention that "the working conditions were not so intolerable because Ms. Budd requested to work part-time on the last day she was physically present at SkyWest DFW[.]" D. Reply (ECF No. 72) at 16.

Third, SkyWest's early retirement option was not offered to Budd individually, or offered in response to Budd's complaints; rather, it was a blanket offer to all eligible employees that just so happened to be available during the time of Budd's administrative leave. Plaintiffs have also failed to introduce evidence that SkyWest presented this offer to Budd as her only alternative to continuing on administrative leave. Consequently, this type of early retirement offer does not reflect difficult or unpleasant work conditions that would support a claim of constructive discharge. Thus "[e]ven considering the summary judgment evidence here in the light most favorable to [plaintiffs], [the court] is satisfied that a reasonable employee in [Budd's] position would not have felt compelled to resign." *McCoy*, 492 F.3d at 557-58.

The court therefore dismisses plaintiffs' retaliation claim based on a theory of

- 20 -

constructive discharge.[5]

3

Because plaintiffs have demonstrated a genuine issue of material fact as to whether Budd suffered an "adverse employment action"—namely, a leave of absence of indefinite duration—SkyWest is not entitled to summary judgment dismissing plaintiffs' retaliation claim, except to the extent that the claim relies on a theory of constructive discharge.

D

The court turns next to the third element of plaintiffs' retaliation claim: whether a causal connection exists between Budd's protected activity and the adverse employment action alleged.  At the summary judgment stage, SkyWest, as the movant, has the burden of "pointing to the absence of evidence" on this element of the claim.  *Celotex Corp.*, 477 U.S. at 325.  Because SkyWest does not address whether plaintiffs have evidence as to this element, SkyWest is not entitled to summary judgment based on the absence of sufficient evidence of causation.

E

In summary, SkyWest is not entitled to summary judgment dismissing plaintiffs' retaliation claim, except to the extent that the claim relies on a theory of constructive discharge.

---

[5]Plaintiffs' complaint alleges that "[Skywest] subjected [Budd] to retaliation for making complaints about the discrimination, ultimately leading to her constructive discharge."  Compl. at 1 (setting out "Nature of the Action").  It is this theory that the plaintiffs cannot rely on to support their retaliation claim.

- 21 -

V

The court turns next to the issue of plaintiffs' entitlement to backpay.

A plaintiff "who is successful in obtaining an injunction under Title VII . . . should ordinarily be awarded back pay unless special circumstances would render such an award unjust." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 412 (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)).  But "it is well settled in this circuit that, in order for an employee to recover back pay for lost wages beyond the date of [her] retirement or resignation, the evidence must establish that the employer constructively discharged the employee." *Jurgens v. EEOC*, 903 F.2d 386, 389 (5th Cir. 1990) (citing *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65-66 & n.8 (5th Cir. 1980)).

Here, plaintiffs seek backpay only for the period beyond May 30, 2020, the date Budd took early retirement.[6]  Because the court has dismissed plaintiffs' constructive discharge claim, plaintiffs are not entitled to recover backpay for this period.

_____

[6]Plaintiffs state in their response brief:

> As a preliminary matter, the EEOC and Budd only seek backpay damages for Budd's disparate treatment and retaliatory constructive discharge claims to which she is entitled. This encompasses backpay accrued between May 2020 and the present, less any income earned. The Plaintiffs do not seek backpay damages for the period during from December to May, when Budd was retaliatorily placed on indefinite leave like Defendant suggests.

Ps. Br. (ECF No. 65) at 39.

\*    \*    \*

For the reasons explained, the court grants SkyWest's motion for summary judgment

in part and denies it in part.

**SO ORDERED**.

February 7, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 23 -