IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § | Civil Action No. 3:22-CV-1807-D |
| and | § § | |
| SARAH BUDD, | § § | |
| Intervenor-Plaintiff, | § § | |
| VS. | § § | |
| SKYWEST AIRLINES, INC., | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Equal Employment Opportunity Commission ("EEOC") and intervenor-plaintiff Sarah Budd ("Budd") (collectively, "plaintiffs," unless otherwise indicated) against defendant SkyWest Airlines, Inc. ("SkyWest"), SkyWest moves for leave to depose Budd and her husband, nonparty witness Michael Billotto ("Billotto"), both of whom have already been deposed in this case. For the reasons that follow, the court denies the motion.

I

Plaintiffs allege that SkyWest discriminated against Budd by subjecting her to a sexually hostile work environment during her employment at SkyWest's Dallas-Fort Worth International Airport facility and by retaliating against her for reporting the harassment she

experienced by placing her on indefinite administrative leave.[1]

Early in the case, SkyWest served plaintiffs with its First Set of Interrogatories and First Requests for Production, which stated, in relevant part:

> <u>Interrogatory No. 11</u>: Please identify with specificity all communications since August 1, 2019 between you and any non-parties to this lawsuit regarding your allegations.
>
> <u>Interrogatory No. 15</u>: Please identify all witnesses to or other persons who may have knowledge about the events made the basis of this Lawsuit.
>
> <u>Request for Production No. 14</u>: Please produce all communications between you and any third party regarding or relating to the events made the basis of this Lawsuit.
>
> <u>Request for Production No. 23</u>: Please produce all e-mails and text messages concerning the allegations contained in the complaint.
>
> <u>Request for Production No. 24</u>: Please produce all documents concerning any online profiles, postings, messages (including, without limitation, tweets, replies, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries), photographs, videos, e-mails, text messages and communications concerning: (a) any allegations set forth in the Complaint; (b) any facts or defenses raised in any of the Defendant's Answers to the Complaint; (c) any emotion, feeling, or mental state; and (d) any events that could reasonably be expected to produce a significant emotion, feeling, or mental state.

---

[1] The court assumes the parties' familiarity with its prior memorandum opinions and orders that recount the background facts and procedural history of this case. *See EEOC v. SkyWest Airlines, Inc.*, 2024 WL 84211, at *1 (N.D. Tex. Jan. 8, 2024) (Fitzwater, J.); *EEOC v. SkyWest Airlines, Inc.*, 2024 WL ___ (N.D. Tex. Jan. 17, 2024) (Fitzwater, J.); *EEOC v. SkyWest Airlines, Inc.*, 2024 WL 476992, at *1-3 (N.D. Tex. Feb. 7, 2024) (Fitzwater, J.).

D. App. (ECF No. 77-2) at 3, 6; Ps. App. (ECF No. 82) at 2, 6. The EEOC and Budd responded separately to these requests. The EEOC objected to Request for Production No. 23 to the extent it was duplicative of another request and to Request for Production No. 24 as overly broad in scope and unlimited in time. It responded to Request for Production No. 24 by stating that it did "not have possession, custody or control of any responsive, relevant documents." Ps. App. (ECF No. 82) at 2. The EEOC did not object to producing any document on the basis of the spousal communication privilege in this initial response. Budd, for her part, responded to Interrogatory No. 15 by identifying Billotto as a person with knowledge and responded to Interrogatory No. 11 and Request for Production No. 14 by asserting that communications between her and Billotto were "privileged pursuant to the marital communications privilege." Ps. App. (ECF No. 82) at 8; D. App. (ECF No. 77-2) at 3, 6. Plaintiffs assert that they did not produce any written communications between Budd and Billotto in these responses because Budd "did not (and does not) possess such information." Ps. Br. (ECF No. 81) at 2.

SkyWest deposed Budd on March 31, 2023. At the deposition, SkyWest asked plaintiffs' counsel whether Budd was "asserting the spousal privilege," to which plaintiffs' counsel responded, "Yes." D. App. (ECF No. 77-3) at 10. Budd did not include Billotto in her testimony regarding the group of individuals with whom she communicated the most during the relevant time period, but she did recount several specific conversations that she had with Billotto about the claims and defenses in the case.

SkyWest deposed Billotto on January 30, 2024. After the parties conferred off the

record concerning the scope of the privilege, the EEOC confirmed that the "approach that [it] intend[ed] to take" was to waive the privilege as to "communications between Ms. Budd and [Billotto] related specifically to the claims or defenses" in the case but to reserve the right to have a "conversation about specific issues as they [came] up." D. App. (ECF No. 77-4) at 4-5. Billotto then proceeded to testify that he had spoken with Budd "every single day" while she was employed at SkyWest, sometimes multiple times a day, and had had "over 100 conversations" with her about the alleged harassment, including "specifics about the things that were said in the workplace that she found to be offensive." *Id.* at 7-9. He recounted that Budd had told him about "the rape jar," "people match[ing] the color of her shirt with the color of other places on her body," people stating that individuals of her religion were "good for f***ing," and people making "references to her looks, references to her body parts, references to screws and bolts and lube in her face, near her, references to her being whored out in parts of Irving and Dallas." *Id.* at 10. He testified that there were additional instances of harassment that Budd had recounted to him that he did not specifically recall.

After Billotto's deposition, SkyWest requested a privilege log in response to Request for Production No. 14 and served a subpoena on Billotto requesting all written communications between him and Budd "discussing or referring to the events, claims and defenses made the basis of" the case. D. App. (ECF No. 77-5) at 5.[2] Plaintiffs informed

---

[2]Plaintiffs assert that this subpoena was untimely, given that it was served on Billotto on February 19, 2024—four days after the close of discovery on February 15, 2024—and

SkyWest that Budd's counsel would represent Billotto for the limited purpose of responding to SkyWest's subpoena and then produced approximately 64 pages of text messages between Billotto and Budd relating to the events in the case. Plaintiffs did not produce a privilege log for Request for Production No. 14, but they did provide supplemental responses to the Request that pointed SkyWest to "any documents produced by Mr. Billotto" as the only responsive documents not subject to the spousal privilege or to the EEOC's prior scope and relevance objections.

To date, SkyWest has conducted 10 depositions in this case, including those of Budd and Billotto.

SkyWest now moves for leave to redepose Budd and Billotto. Plaintiffs oppose the motion, asking the court to deny the motion in its entirety or, in the alternative, to limit the depositions both in time and in scope so that SkyWest is permitted to ask only "questions that could not have been asked in either initial deposition due to unavailable information." Ps. Br. (ECF No. 81) at 14. The court is deciding the motion on the briefs, without oral argument.

II

"A party must obtain leave of court" to conduct a deposition when that deposition "would result in more than 10 depositions being taken" by the party or when "the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(i)-(ii). The court "must

---

maintain that Billotto's production was therefore voluntary. The parties do not specify the date on which SkyWest requested the privilege log.

grant leave to the extent consistent with Rule 26(b)(1) and (2)." Rule 30(a)(2). Under Rule 26(b)(1),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(b)(1). And under Rule 26(b)(2)(C), the court must limit discovery when it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(b)(2)(C).

District courts in the Fifth Circuit "have applied a good cause standard when deciding a motion to retake a deposition," and they usually place the burden on the movant to establish good cause for the deposition. *See Chrastecky v. C. R. Bard, Inc.*, 2021 WL 2232013, at *2 (W.D. Tex. May 14, 2021) (citing *Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012)); *see, e.g.*, *Michael G. Stag, LLC v. Stuart H. Smith, LLC*, 2021 WL 3809077, at *3 (E.D. La. Aug. 26, 2021); *Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL

1558337, at *1 (N.D. Tex. July 15, 2002) (Fitzwater, J.).[3]  This good cause requirement is rooted in the language of Rule 26(b): essentially, to establish good cause, the movant must demonstrate that the discovery is consistent with Rule 26(b)(1) and (2).[4]

Courts have typically found good cause to "reopen[] a deposition 'where a witness was inhibited from providing full information at the first deposition' or 'where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition.'" *Kleppinger*, 283 F.R.D. at 333 (quoting *Keck v. Union Bank of Switz.*, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997)).  "Courts have found 'new information,' justifying the reopening [of] a deposition, where (1) new parties were added to the case, (2) new allegations were made in the pleadings, and (3) new

---

[3]Other courts have placed the burden on the party *opposing* the deposition to "demonstrate good cause why [it] should not be taken," on the principle that "leave to conduct a second deposition should ordinarily be granted." *Jade Trading, LLC v. United States*, 64 Fed. Cl. 85, 86 (2005) (citation omitted); *see Judicial Watch, Inc. v. U.S. Dep't of Com.*, 34 F.Supp.2d 47, 54 (D.D.C. 1998).  Some courts have even eschewed a good cause requirement entirely, on the theory that such a requirement "would involve disregard of Rule 30(a)(2)(A)(ii) when its terms mandate leave for a second deposition." *Clark v. Penn Square Mall Ltd. P'ship*, 2013 WL 139778, at *1 (W.D. Okla. Jan. 10, 2013).  But so far as this court is aware, the practice among district courts in this circuit is to require the movant to show good cause under Rule 26(b).  The Fifth Circuit has not addressed this issue.

[4]The Fifth Circuit has also adhered to a good cause standard for other discovery-related issues, such as in deciding whether to modify the scheduling order under Rule 16(b)(4), *see Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997), or in considering whether to extend a party's time to respond to interrogatories, *see Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  In those instances, the Fifth Circuit has used a four-factor test to determine whether good cause exists: (1) the explanation for the movant's failure to timely take the action in question; (2) the importance of the request; (3) the potential prejudice in granting the request; and (4) the availability of a continuance to cure such prejudice.  *See Reliance Ins. Co.*, 110 F.3d at 257.

documents were produced." *Id.* at 333 n.4 (quoting *Keck*, 1997 WL 411931, at *1). "[W]here the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information." *Id.* at 333 (citation omitted) (alteration in original); *see Martin v. Fid. Nat'l Title Ins. Co.*, 2011 WL 3349843, at *4 (E.D. La. Aug. 3, 2011) (citations omitted).

If, on the other hand, the information the movant seeks could have been obtained at the prior deposition or could be gathered by less burdensome means, the movant may not be entitled to conduct an additional deposition. *See, e.g.*, *Lowery v. Noble Drilling Corp.*, 1997 WL 675328, at *1 (E.D. La. Oct. 29, 1997); *Karr v. Four Seasons Mar., Ltd.*, 2004 WL 797728, at *6 (E.D. La. Apr. 12, 2004). Similarly, a lack of diligence in obtaining information before the initial deposition can result in denial of leave to conduct an additional deposition. *Klappinger*, 283 F.R.D. at 333 (citation omitted); *MC Trilogy Tex., LLC v. City of Heath, Tex.*, 2024 WL 346512, at *11 (N.D. Tex. Jan. 29, 2024) (Fitzwater, J.). The court should not reopen a deposition unless the new information makes the deponent's initial deposition testimony "incomplete or useless," "alter[ing] [it] in such a way as to directly contradict [the deponent's] prior testimony as to warrant further cross-examination." *Benavidez v. Oil Patch Grp., Inc.*, 2022 WL 2912592, at *4 (W.D. Tex. Mar. 11, 2022) (citing *Innovative Mktg. & Tech., LLC v. Norm Thompson Outfitters, Inc.*, 171 F.R.D. 203, 205 (W.D. Tex. 1997); *Allen & Co. v. Occidental Petroleum Corp.*, 49 F.R.D. 337, 341 (S.D.N.Y. 1970)).

III

SkyWest moves for leave to depose Budd and Billotto despite the fact that they have already been deposed and that SkyWest has already conducted 10 depositions in the case. SkyWest contends that there is good cause for these depositions because: (1) "there was an apparent change in Ms. Budd's stance on the spousal communications privilege at the deposition of Mr. Billotto . . . that differed from the stance previously taken in response to written discovery"; (2) "SkyWest received new information through the production of text communications between Ms. Budd and Mr. Billotto in response to both its subpoena for documents to Mr. Billotto and Ms. Budd's supplemental responses to SkyWest's written discovery requests on March 4, 2024"; and (3) it has been over one year since Budd's deposition, and SkyWest wishes to question her regarding her updated medical records and state of health since that time. D. Br. (ECF No. 77) at 7, 9-10.

The court holds that SkyWest has not demonstrated good cause to conduct these depositions. First, SkyWest has already had "ample opportunity" to obtain the information it seeks. *See* Rule 26(b)(2)(ii). The record shows that the information SkyWest seeks from Budd and Billotto could have been gathered—and, to an extent, *was* gathered—at the time of their initial depositions. SkyWest maintains that it refrained from asking Budd questions at her deposition related to her communications with Billotto due to its belief that plaintiffs were asserting a blanket spousal communication privilege, meaning that it allegedly had received only "edited" testimony from Budd on certain topics that "excluded references to communications with Mr. Billotto." D. Br. (ECF No. 77) at 8. But in her deposition, Budd

repeatedly referenced conversations she had had with Billotto related to her claims and defenses in this case. Plaintiffs did not object to this testimony on the basis of the privilege, and SkyWest did not seek to clarify the scope of plaintiffs' intended use of the privilege in light of this testimony. Nor did SkyWest ask *any* follow-up questions of Budd about her conversations with Billotto. Because a waiver of privilege may occur when a party provides information about privileged communications during testimony or a deposition, *see Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999), the fact that plaintiffs' counsel allowed Budd to testify about conversations with her husband, without objection, should have indicated to SkyWest the necessity of clarifying the intended scope of plaintiffs' invocation of the privilege or of inquiring whether plaintiffs were waiving the privilege, in whole or in part.[5]

Moreover, SkyWest could have subpoenaed Billotto before his initial deposition for the purpose of conducting more informed questioning, but it did not do so. Although SkyWest does not state why it failed to do so, particularly given that it subpoenaed text messages from all other nonparty witnesses before their depositions, this failure was presumably because SkyWest assumed that the spousal communication privilege applied to any documents Billotto possessed. Had SkyWest sought to clarify the scope of plaintiffs' intended use of the privilege before Billotto's deposition, it could have had access to these text messages in time to question Billotto about them at his deposition. Regardless, Billotto

---

[5]*Nguyen* specifically addresses waiver of the attorney-client privilege, not the spousal communication privilege, but the principle it discusses may be extended to this context.

testified extensively at his deposition about conversations he had had with Budd related to the case. Plaintiffs' counsel never objected to any of his testimony on the basis of the privilege. And, plaintiffs point out, SkyWest waited over two weeks after Billotto's deposition—and four days after the discovery deadline—to serve the subpoena. All of these facts point to the conclusion that SkyWest lacked proper diligence in clarifying the scope of plaintiffs' intended invocation of the privilege prior to Billotto's deposition. *See Klappinger*, 283 F.R.D. at 333.

Second, SkyWest appears to seek information that is "unreasonably cumulative or duplicative" of discovery that it has already obtained. Rule 26(b)(2)(i). SkyWest has not identified any portion of the text messages produced by Billotto that contradicts evidence already in the record, nor any portion of the text messages that has indicated that Budd's or Billotto's prior deposition testimony is "incomplete or useless." *Benavidez*, 2022 WL 2912592, at *4. Rather, the text messages simply corroborate Budd's and Billotto's prior testimony and document production. Furthermore, nothing contained in the text messages indicates that Budd or Billotto would substantially add to their earlier testimony were they to be deposed again.

Third, the information SkyWest seeks from Budd about her updated medical records and state of health can be gathered by "more convenient, less burdensome, or less expensive" means. Rule 26(b)(2)(i). Budd testified in her initial deposition about her migraines. And since the time SkyWest filed this motion, plaintiffs have produced a signed HIPPA release form permitting SkyWest to request records from the medical provider who has treated

Budd's migraines since her initial deposition. It therefore appears that SkyWest can obtain this information directly from her medical provider, obviating the need to subject Budd to another deposition.

The court concludes that the "burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1). Because granting SkyWest leave to conduct the requested depositions of Budd and Billotto would be inconsistent with Rule 26(b)(1) and (2), the court holds that SkyWest is not entitled to conduct these depositions.

\* \* \*

For the reasons explained, the court denies SkyWest's motion.

**SO ORDERED**.

May 2, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE