THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| *Plaintiff,* | § § | Civil Action No. |
| v. | § § | 3:22-cv-01807-C |
| SKYWEST AIRLINES, INC., | § § | |
| *Defendant.* | § § | |

## PLAINTIFF EEOC'S MOTION IN LIMINE

Plaintiff Equal Employment Opportunity Commission ("EEOC") files this Motion in Limine. The EEOC requests that the parties, counsel for the parties, and, through counsel, any and all witnesses be instructed to refrain from asking about or mentioning, directly or indirectly, any of the matters contained in this Motion in Limine unless and until such matters have been first called to the attention of this Court, out of the presence or hearing of the jury, and after a favorable ruling obtained from the Court concerning the admissibility and relevance of any such matters.

Defendant's unlawful practices in violation of § 703(a)(1) of Title VII, 42 U.S.C. § 2000 (e)-2(a)(1) are at issue in this case. These unlawful practices, which continued on a regular basis, included subjecting Charging Party Sarah Budd to harassment on the basis of sex, female, which created an offensive, abusive, intimidating, and hostile work environment. The EEOC believes that at trial the Defendant will attempt to introduce unfairly prejudicial evidence. An ordinary objection during the course of trial, even if sustained with proper instructions to the jury, will not remove such effect because of the inflammatory and misleading nature of Defendant's evidence.

I.  **The federal rules preclude evidence or argument that Sarah Budd wore immodest clothing.**

The EEOC respectfully requests the Court instruct Defendant not to mention, question witnesses and parties, or make any statements to the jury that Sarah Budd dressed immodestly. At deposition, two of Budd's coworkers testified that Budd wore her button-down uniform shirt partially unbuttoned with a camisole underneath. Appx.0000016; Appx.0000019. Each remarked that this was inappropriate, and one speculated as to what she might have been "looking for" by doing so. Defendant has since added the SkyWest uniform to its pretrial disclosures as a demonstrative exhibit. *See* Dkt. 107. Therefore, the EEOC believes Defendant intends to introduce evidence that Budd's clothing choices at work were insufficiently modest or that her shirts were low-cut or partially unbuttoned. This would be irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401–03. Fed. R. Evid. 401. Due to the improper inferences this testimony invites, it should not reach a jury unless and until the Court determines its probative value substantially outweighs its prejudicial effect. *See* Fed. R. Evid. 412.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without it." Evidence of a sexual harassment claimant's allegedly provocative dress could be relevant for no other purpose than to suggest she welcomed sexually suggestive behavior. *See Meritor Savings Bank, F.S.B. v. Vinson*, 477 U.S. 57 (1986). The Supreme Court held in *Meritor* that sexually charged speech and dress was not per se irrelevant in discerning an employee's subjective view of the sexual advances made by her supervisor, which the defendant in *Meritor* argued were welcome. *Id*. at 68–69. Unlike in *Meritor*, there is no allegation in this case that Budd engaged in a consensual relationship to which any sexual workplace conduct was incidental. Welcomeness is not at issue here. Accordingly, any testimony that Budd may have occasionally

worn a low cut or partially unbuttoned shirt is not probative of the issue of whether SkyWest subjected her to a hostile work environment based on her sex and can only serve to create an improper inference in the minds of the jury that Budd's sexual predisposition should be considered.

Further, Federal Rule of Evidence 412 bars evidence offered to prove a claimant's sexual behavior or predisposition unless its probative value substantially outweighs the danger of unfair prejudice.[1] The rule renders presumptively inadmissible any evidence of the complainant's behavior that "may have a sexual connotation for the factfinder . . . such as that relating to [her] mode of dress, speech, or lifestyle." Fed. R. Evid. 412 advisory committee's note to 1994 amendment. The prospect that Budd would somehow welcome advances from any other employee, "no matter how gross, crude and boorish" simply because she occasionally leaves the top button of her uniform unbuttoned is "so illogical and at variance with human experience means that what little, if any, probative force the evidence [Defendant] seeks is utterly overwhelmed by the harm done" in permitting the testimony. *See Howard v. Historic Tours of Am.*, 177 F.R.D. 48, 53 (D.D.C. 1997) (refusing to compel discovery of a plaintiff's sexual history with a coworker in her lawsuit based on allegations of sexual harassment by a different employee). *See also Jaros v. Lodgenet Entm't Corp.*, 294 F.3d 960, 965 (8th Cir. 2002) (abrogated on other grounds) (refusing to admit evidence of a sexual harassment plaintiff's dress under Fed. R. Civ. P. 412). As testimony that witnesses perceived that Budd was immodest in how she wore her work uniform is irrelevant and prejudicial, the EEOC requests this Court to bar its admission prior to a final ruling on admissibility at trial.

---

[1] A party seeking to offer evidence pursuant to Rule 412(b) must file a motion seeking its admission at least 14 days before trial. Fed. R. Evid. 412(c)(1)(B). The EEOC does not yet know whether Defendant intends to file such a motion but requests the court act preemptively.

3

**II.     Argument that the government is inappropriately or unduly involved in this litigation is irrelevant, unduly prejudicial, and misleads the jury.**

Pursuant to Federal Rules of Evidence 401, 402, and 403, the EEOC respectfully requests the Court instruct Defendant not to mention, question witnesses and parties, or make any statements to the jury that the EEOC specifically, or the government generally, is inappropriately or unduly involved in this Title VII action or that its participation is an intrusion by government into Defendant's business decisions. The involvement of the EEOC as Plaintiff does not bear on the merits of this Title VII action, which are the same regardless of whether the EEOC or Ms. Budd filed suit. Insinuation that the EEOC's involvement is anything other than a regular part of its law enforcement responsibility to the public is targeted to stir anti-government sentiment. The probative value of testimony or argument about the nature of the EEOC's involvement in litigation as opposed to that of a private litigant, beyond a basic explanation of the fact, is substantially outweighed by the potential for unfair prejudice. Fed. R. Evid. 403. It encourages the jury to act as a referendum on the mission and existence of the EEOC rather than engage in a sincere evaluation of Ms. Budd's allegations that Defendant violated Title VII. The jury is not aided in understanding Title VII or the facts of this case by testimony regarding the nature of an EEOC enforcement action as opposed to an action brought by a private litigant. Accordingly, any insinuation that the EEOC's involvement in this action intrudes on Defendant's ability to make decisions with respect to its personnel should be precluded prior to a final ruling on admissibility at trial.

**III.    Reference to marriage counselor Brian Melcher's testimony is irrelevant and prejudicial and may contain hearsay.**

Pursuant to Federal Rules of Evidence 401, 402, 403, 602, and 801, the EEOC respectfully requests the Court to instruct Defendant not to mention or introduce the testimony of Brian Melcher or of other witnesses referring to Mr. Melcher. Mr. Melcher is a counselor based in Utah

who saw Sarah Budd and her husband Michael Billotto from approximately June 2019 to October 2022. Appx.0000002. Ms. Budd and Mr. Billotto used Mr. Melcher's services almost entirely before and after Ms. Budd's employment in DFW, rather than during that employment. After an initial three in-person sessions in Utah in June and July of 2019, Mr. Melcher did not see Ms. Budd and Mr. Billotto again for over a year until August 2020. Appx.0000002. All three 2019 appointments predate Ms. Budd's employment in DFW, which started on August 22, 2019. Accordingly, there was no overlap between his treatment and Ms. Budd's employment with SkyWest, which ended on May 30, 2020. Due to the timing of Mr. Melcher's appointments with Ms. Budd and Mr. Billotto, Mr. Melcher is unable to testify to Ms. Budd's mental state during her employment by Defendant in DFW.

Mr. Melcher has no independent recollection of being told about Ms. Budd's workplace after the fact. Ms. Budd disclosed Mr. Melcher as someone with knowledge as she recalled mentioning her employment with Defendant to him. However, he testified that he does not recall discussing Ms. Budd's employment by Defendant either in Utah or DFW. Appx.0000007-8; Appx.0000010. He does not recall Ms. Budd ever telling him about her EEOC charge. Appx. 0000011. In fact, Mr. Melcher's memory cannot even be refreshed as he retained no notes from his treatment. *See* Appx.0000005-6. As a result of his memory issues and failure to take notes, his testimony is speculative. *See* Fed. R. Evid. 602.

Mr. Melcher' testified that his therapy focused primarily on Ms. Budd's and Mr. Billotto's marriage. *See* Appx.0000009-10. Mr. Melcher testified that he only saw Ms. Budd individually on two occasions: March 2021 and October 2021. *See* Appx.00000003-4. He also only saw Mr. Billotto individually on two occasions: September 9, 2022 and October 1, 2022. *See* Appx.0000004. At deposition, he testified as to the content of his text messages with Ms. Budd

and her husband, who would contact him when they had marital difficulties. These marital disputes are run of the mill disagreements between spouses with no relation to Ms. Budd's hostile work environment claim. Such testimony is irrelevant and would distract and mislead the jury in violation of Federal Rules of Evidence 401 through 403. Any testimony offered for its truth that recounts statements made to Mr. Melcher by Mr. Billotto is also inadmissible hearsay that does not fall within any exception.

Any probative value Mr. Melcher's testimony has with respect to stressors in Ms. Budd's life that would have contributed to her emotional harm is outweighed by the fact that Ms. Budd did not communicate with Mr. Melcher during the relevant time period and intimate details of disagreements in Ms. Budd's marriage could only serve to prejudice her. *See* Fed. R. Evid. 403. In sum, as Mr. Melcher has no relevant testimony about Ms. Budd's damages resulting from her employment by SkyWest and his testimony is unduly prejudicial, the EEOC respectfully requests this Court bar its admission prior to a final ruling on admissibility at trial.

### IV. The EEOC and Defendant have agreed that Defendant will not refer to Title VII damage caps.

The EEOC and Defendant have agreed that Defendant will not mention, question witnesses and parties, or make any statements to the jury about limitations on compensatory and punitive damages. According to Title VII, "the court shall not inform the jury of the limitations [on compensatory and punitive damages] described in subsection (b)(3) of this section." 42 U.S.C. § 1981a(c)(2).

### V. Reference to Michael Billotto's prior marriage or custody agreement with his ex-wife is irrelevant and prejudicial.

The EEOC respectfully requests the Court instruct Defendant not to mention, question witnesses and parties, or make any statements to the jury about Michael Billotto's prior marriage or divorce pursuant to Federal Rules of Evidence 401 through 403. Defendant's line of questioning

during Mr. Billotto's deposition gives the EEOC reason to believe that Defendant intends to introduce evidence of Mr. Billotto's divorce, which was finalized in 2017, two years before the events that form the basis for this lawsuit. Defendant asked for details of the divorce and subsequent custody and child support proceedings. Mr. Billotto has been married to Ms. Budd since 2019 and has full custody of his children. The details of his previous relationships are irrelevant to the issue of whether Ms. Budd experienced a hostile work environment while at SkyWest. They are also not probative of Ms. Budd's damages as Mr. Billotto's divorce was long settled prior to his marriage to Ms. Budd.

Respectfully,

ROBERT CANINO
Oklahoma Bar No. 011782
Regional Attorney

ANN HENRY
Illinois Bar No. 6272394
Acting Supervisory Trial Attorney

/s/ Alexa Lang
ALEXA LANG
Texas Bar No. 24105356
Trial Attorney

BROOKE E. LÓPEZ
Texas Bar No. 24125141
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Dallas District Office
207 Houston, 3rd Floor
Dallas, Texas 75202
(TEL) (972) 918-3648
(FAX) (214) 253-2749

CERTIFICATE OF CONFERENCE

I certify that I conferred with Liz Drumm and Chad Schultz, counsel for Defendant, via email on October 24, 2024. The parties agreed not to refer to Title VII damage caps but could not reach agreement with respect to the remaining topics of this motion.

/S/ Alexa Lang