THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, § § § § *Plaintiff,* § § **v.** § § SKYWEST AIRLINES, INC., § § *Defendant.* § | Civil Action No. 3:22-cv-01807-C |

# PLAINTIFF EEOC'S TRIAL BRIEF ON COMPENSATORY AND PUNITIVE DAMAGES

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), alleging Defendant subjected Sarah Budd to a hostile work environment based upon her sex, female, during her employment beginning in 2019 and placed her on an indefinite leave in retaliation for reporting harassing conduct. EEOC briefed the legal standards for EEOC and Budd's[1] hostile work environment and retaliation claims in response to Defendant's motion for summary judgment. There are no disputes between the parties as to the legal standards that apply. The parties disagree, however, on whether indefinite paid administrative leave constitutes an adverse action, but the Court has held that is a question for the jury.

EEOC submits this trial brief to address the legal standards for the damages it seeks, including the appropriateness of an eggshell plaintiff jury charge instruction, that have not yet been addressed in briefing. EEOC seeks non-pecuniary compensatory damages on Budd's behalf as well as punitive damages. EEOC does not seek backpay damages.[2]

---

[1] Budd is an intervenor-plaintiff in this lawsuit.
[2] While EEOC previously sought backpay damages, EEOC's claim for backpay was dismissed on motion for summary judgment. ECF 75.

I. **Compensatory damages**

EEOC anticipates Budd will testify that the hostile work environment she endured during her employment caused her shame, hopelessness in her ability to support her family financially, uncontrollable bouts of crying, stress, anxiety, loss of enjoyment of life, migraines, and gastrointestinal issues. Budd feared losing the income and benefits of her job, so much so that she continued to work in this hostile environment to ensure she did not lose the invaluable flight benefits her children used regularly to see their father. EEOC also anticipates its expert witness Dr. Kristin Samuelson will testify that Budd suffered from major depressive disorder while Defendant employed Budd from September 2019 to December 2019. Dr. Samuelson will also testify that Budd currently suffers from post-traumatic stress disorder, beginning in January 2020 when her symptoms were more severe. Both Budd and Dr. Samuelson will testify to Budd's history of sexual trauma and how this history exacerbated her mental and emotional response to the harassing conduct she endured at SkyWest.

A. **Ms. Budd is an eggshell plaintiff.**

Pursuant to Section 102(a) of the Civil Rights Act of 1991, Title VII plaintiffs may recover compensatory damages from defendants that engage in unlawful intentional discrimination. 42 U.S.C. § 1981a(a)(1). Compensatory damages exist to compensate a plaintiff's "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, or other non-pecuniary losses caused by the employer's intentional discrimination." *Id.* § 1981a(b)(3). Compensatory damages for emotional distress are "necessarily vague and are generally considered a fact issue for the jury." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000). "No evidence of the monetary value of such intangible things as pain and suffering need be introduced in evidence." *Wright v. Blythe-Nelson*, Civil Action No. 3:99-CV-2522-D, 2004 U.S. Dist. LEXIS 25567, at *30 (N.D. Tex. Aug. 26, 2004) (Fitzwater, S.).

2

To receive an award of compensatory damages, "there must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm…." *Giles v. GE*, 245 F.3d 474, 488 (5th Cir. 2001). A plaintiff can provide evidence of the nature and extent of the harm through their own testimony as well as through corroborating testimony or medical evidence. *Id*. at 488; *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996).[3] Sleeplessness, anxiety, stress, marital and/or social problems, humiliation, loss of self-esteem, depression, changes in weight, starting to smoke, headaches, and shame can support a compensatory damages award, though this list is not exhaustive. *Id.* (affirmed compensatory damages award of $150,000 with testimony of sleeplessness, headaches, marital difficulties, loss of prestige and social connections, depression, discouragement to return to work); *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998) (affirmed compensatory damages award with testimony of anxiety, sleeplessness, stress, marital hardship, and loss of self-esteem). A plaintiff need not recite specific terms on the stand in support of their compensatory damages claim. *Carter v. Duncan-Huggins, Ltd.*, 234 U.S. App. D.C. 126, 727 F.2d 1225, 1238 (1984) ("To place a premium on conclusory terms…would distract attention away from the central question of whether plaintiff established actual, but intangible harm.").

A defendant cannot evade liability even when pre-existing vulnerabilities or conditions exacerbate a plaintiff's emotional distress. The eggshell skull doctrine, also referred to as eggshell plaintiff or thin skull rule, requires a defendant to "take the plaintiff as [it] finds him," meaning the defendant is "fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim." *Koch v. United States*, 857 F.3d 267, 273 (5th Cir. 2017) (quoting

---

[3] It is important to note that, while EEOC intends to present evidence outside of Budd's own testimony to support a claim for compensatory damages, a plaintiff is not required to provide evidence beyond their testimony. *See Giles*, 245 F.3d at 488 ("[W]e do not now hold nor have we ever held, that a plaintiff may not prove mental anguish damages with his testimony alone.").

3

*Maurer v. United States*, 668 F.2d 98, 99-100 (2d Cir. 1997)). *See also Hare v. H&R Indus.*, CIVIL ACTION NO. 00-CV-4533, 2002 U.S. Dist. LEXIS 7502, at *4 (E.D. Pa. Apr. 29, 2002) ("[U]nder the so-called eggshell plaintiff doctrine of tort law, it is well-known that the Defendant tortfeasor takes the Plaintiff as she is. That the Plaintiff was susceptible to other stress factors is irrelevant to the amount of damages."), *aff'd* 67 F. App'x 114, 121 (3d Cir. 2003); *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1294 (8th Cir. 1997) (reversing a district court's decision to limit damages in a sexual harassment case because, under the eggshell skull principle, "foreseeability does not limit an award of money damages," including for "harm caused to a plaintiff who happens to have a fragile psyche"). A defendant's knowledge of an eggshell plaintiff's underlying conditions or vulnerabilities is not required when applying this doctrine. *Koch*, 857 F.3d at 274 ("This court and district courts within our circuit have expressed approval and acceptance of the thin skill, eggshell skull, or defendant takes the victim as found rule without limiting its application to latent or unmanifested preexisting conditions.") (internal quotations omitted). *See also O'Neal v. Bd. of Cty. Comm'rs of Fremont*, Civil Action No. 16-cv-01005-TMT-KLM, 2020 U.S. Dist. LEXIS 86796, at *29 (D. Colo. May 18, 2020) ("The rule that a tortfeasor takes its victim as it finds him does not depend on whether the tortfeasor knows anything about the victim.") (internal quotations omitted). The eggshell skull doctrine is an exclusively subjective consideration and is not limited to the objectivity also considered in assessing the substantive Title VII hostile work environment claim. *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112, 1156-57 (D. Kan. 2017) ("While there is both an objective and subjective element for considering whether a work environment was hostile under Title VII, that concerns the determination of liability, not the determination of whether compensatory damages that[sic] should be awarded.").

A plaintiff is not limited to evidence of a pre-existing physical or mental condition to support an eggshell skull theory. *Koch*, 857 F.3d at 274 ("When an actor's tortious conduct causes

4

harm to a person that, because of a preexisting physical or mental condition *or other characteristics of the person*, is of a greater magnitude…than might reasonably be expected, the actor is nevertheless subject to liability for all such harm to the person.") (emphasis added) (quoting Restatement (Third) of Torts § 31).[4] Rather, pre-existing vulnerabilities, such as past exposure to trauma, can exacerbate the psychological and emotional harm an individual experiences and serve as the basis for this theory. *See Mayo-Coleman v. Am. Sugar Holdings, Inc.*, No. 14-cv-79 (PAC), 2018 U.S. Dist. LEXIS 94821, at *12 (S.D.N.Y. June 5, 2018) (holding in a Title VII case that the plaintiff's "increased susceptibility to emotional distress from sexual harassment due to her previous experience as a rape victim could be considered when calculating compensatory damages"); *Freeman v. Busch*, 349 F.3d 582, 590 (8th Cir. 2003) (affirming an eggshell plaintiff instruction in a sexual battery case where a plaintiff produced evidence that she had been molested as a child); *Smith v. City of the Dalles*, No. 6:16-cv-1771-SI, 2021 U.S. Dist. LEXIS 91576, at *2, *7 (D. Or. May 13, 2021) (permitting an expert to testify about a plaintiff's past experiences and trauma with police officers in Section 1983 case for the purpose of establishing the eggshell plaintiff theory); *O'Neal*, 2020 U.S. Dist. LEXIS 86796, at *30 (permitting an eggshell plaintiff jury instruction where a plaintiff testified about the emotional impact of other "significant traumas she suffered in her life"); *Priest v. Brummer*, No. 1:06-CV-065-TS, 2008 WL I2788759, at *6 (N.D. Ind. July 18, 2008) (finding a plaintiff was "especially sensitive" and "particularly susceptible" because of a "prior experience in her childhood" pursuant to the eggshell plaintiff theory in an IIED case against her former employer); *Caruso v. Solorio*, No. 1:15-CV-780 AWI EPG (PC), 2020 U.S. Dist. LEXIS 245841, at *81 (E.D. Cal. Dec. 30, 2020) ("In § 1983 cases, a defendant takes the plaintiff as he finds her, meaning that the eggshell plaintiff doctrine applies.

---

[4] The Restatement (Third) of Torts § 31(b) specifically advises "a plaintiff need not have a preexisting condition to recover for physical or emotional harm that is of unforeseeable magnitude." Rather, liability exists for "unusual characteristics" that exist outside of diagnosed physical or mental conditions. *Id.*

Applying that doctrine in this case means that evidence of a prior gang rape is relevant to proving [a plaintiff's] emotional distress damages.").

EEOC and Budd's claim for compensatory damages should be analyzed through the lens of the eggshell skull doctrine because of Budd's past sexual trauma. Some of the offensive comments Budd heard at SkyWest referenced the kind of traumatic experience she had endured. She had a more visceral, physical reaction to such comments, and the hostile environment generally, than others without her trauma history may have had. In addition, she was more afraid of the possibility of the hostile work environment escalating than others might have felt. Budd was so impacted by the hostile work environment that Dr. Samuelson diagnosed Budd with both major depressive disorder, which has resolved, and ongoing post-traumatic stress disorder. Because SkyWest must take Budd as it found her, it is liable for all emotional distress Budd experienced because of the hostile work environment.

### B.  There is no duty to mitigate compensatory damages.

Originally, Defendant's expert witness Dr. Steven Berger was expected to testify about Budd's efforts to mitigate her emotional distress such as whether or not she takes anti-anxiety medication or receives therapy. While Dr. Berger's testimony is precluded from this matter following this Court's Order (ECF 110), EEOC anticipates Defendant's counsel will question Budd and Dr. Samuelson about the same or similar topics. During Budd's deposition, Defendant's counsel asked Budd whether she sought medical attention to improve her emotional distress. During Dr. Samuelson's deposition, Defendant's counsel asked Dr. Samuelson to opine on whether therapy would help an individual treat their psychological issues, whether Budd's psychological issues would have improved if she sought therapy or other forms of treatment, and whether the measures Budd had taken to self-soothe were efficacious.

6

There is no statutory or common law duty to mitigate compensatory damages in Title VII cases.[5] Congress explicitly incorporated a duty to mitigate backpay damages, not compensatory damages. *See* 1972 Amendments, Pub. L. 92-261 Section 4(a) (codified at 42 U.S.C. § 2000e-5(g)(1)) (explicitly providing that "amounts earnable with reasonable diligence… shall operate to reduce the back pay otherwise available"). *See also EEOC v. Fred Meyer Stores*, 954 F.Supp.2d 1104, 1128 (D. Or. 2013) ("Congress explicitly chose to include a duty of claimants to mitigate back pay losses. Congress' deliberate decision to carve out this duty to mitigate damages clearly signifies that Congress did not intend to create a duty to mitigate all compensatory damages.") (internal citation omitted)); *United States v. Regents of N.M. State Univ.*, No. 16-CV-911-JAP-LF, 2018 U.S. Dist. LEXIS 169861, at *10 (D.N.M. Oct. 1, 2018) ("Accordingly, the Court concludes that the affirmative defense of failure to mitigate is inapplicable to the claim for compensatory damages… [and] could confuse the jury and result in unfair prejudice through the improper reduction of compensatory damages."); *EEOC v. Fair Oaks Dairy Farms, LLC*, No. 2:11 cv 265, 2012 U.S. Dist. LEXIS 154570, at *8 (N.D. Ind. Oct. 29, 2012) ("[T]he mitigation defense would not limit compensatory damages arising from emotional distress."); *EEOC v. Glob. Horizons, Inc.*, No. CIVIL 11-00257 LEK, 2014 U.S. Dist. LEXIS 26342, at *19 (D. Haw. Feb. 28, 2014) (holding the same).

Logic also defies imposing a duty to mitigate compensatory damages. As previously noted, testimony alone sans medical evidence can serve as the basis for proving compensatory damages. *See Giles*, 245 F.3d at 488. If courts impose a mitigation duty for compensatory damages, arguably any claim for damages supported with testimony alone would fail as a matter of course. Further,

---

[5] There is a general "duty to mitigate" defense in civil lawsuits, but this is a defense solely recognized in tort and contract cases and not contemplated in federal employment anti-discrimination cases. In the Fifth Circuit Pattern Jury Instructions for Civil Cases (2020), there is a mitigation charge specific to Title VII cases (11.14) and then a general mitigation charge (15.5). 226-27, 345. The Title VII mitigation charge only refers to mitigating backpay and not compensatory damages. *Id.* at 226 (charge instruction requiring in part that a defendant show there was "substantially equivalent employment available" and the plaintiff "failed to use reasonable diligence to seek those positions").

7

quantifying mitigation efforts to offset an award for compensatory damages, as one does for backpay, would clash with the legal principle that compensatory damages are not susceptible to calculation. *See Blythe-Nelson*, 2004 U.S. Dist. LEXIS 25567, at *30. To calculate how much a perceived mitigation effort, such as medication or therapy, would impact an already intangible reward would be nearly impossible.

## II.     Punitive damages

Pursuant to Section 102(a) of the Civil Rights Act of 1991, Title VII plaintiffs may also recover punitive damages from defendants that engage in unlawful intentional discrimination. 42 U.S.C. § 1981a(a)(1). Punitive damages are recoverable if a plaintiff can show the defendant discriminated against the plaintiff "with malice or reckless indifference" to their federal rights. *Id.* at § 1981(b)(1). The term "malice or reckless indifference" focus on the actor's state of mind," which "pertain[s] to the employer's knowledge that it *may* be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. ADA*, 527 U.S. 526, 535 (1999) (emphasis added). A plaintiff is not required to show an employer engaged in "egregious or outrageous discrimination independent of the employer's state of mind." *Id.* Rather, a plaintiff need only show an employer discriminated with "a perceived risk that its actions will violate federal law." *Id.* at 536.

In sexual harassment cases involving coworkers, a plaintiff can show an employer acted with malice and reckless indifference based upon the way the company responded to witnessing or receiving complaints about the harassment.[6] In *Wantou v. Wal-Mart Stores Texas, L.L.C.*, the

---

[6] The Fifth Circuit's Jury Pattern Instructions for Civil Cases (2020) for Title VII punitive damages may inadvertently prejudice plaintiffs in coworker harassment cases. 220-21. The instruction references an employer's imputed liability when *an individual in a managerial capacity* acts with malice or reckless indifference. *Id.* (emphasis added). This distinct language, without further clarification, can cause jurors to misconstrue the principles of vicarious liability applicable in Title VII cases and, more particularly, cases involving agents ratifying the actions of subordinates or lower-level employees. *See Kolstad*, 527 U.S. at 542 (holding common law agency principles apply to Title VII punitive awards which includes when "the principal or a managerial agent of the principal ratified or approved the act.") (citing Restatement (Second) of Torts § 909).

Fifth Circuit affirmed a punitive damages award where the company failed to respond to complaints of coworker harassment and eventually terminated the plaintiff. 23 F.4th 422, 440 (5th Cir. 2022). *See also Timm v. Progressive Steel Treating*, 137 F.3d 1008, 1009 (7th Cir. 1998) (affirming punitive damages award where the plaintiff complained of her coworker's sexually harassing conduct and, despite company's "open door policy," the company ignored her complaint because it was not considered "formal"); *Kimbrough v. Loma Linda Dev., Inc.*, 183 F.3d 782, 785 (8th Cir. 1999) (affirming punitive damages award where a higher-level supervisor ratified the harassing conduct of a lower-level supervisor when the higher-level supervisor ignored repeated complaints of harassment). A plaintiff can also show an employer acted with malice and reckless indifference when the company retaliates against the employee for reporting harassing conduct. *See Mason v. Helping our Seniors, L.L.C.*, No. 22-51041, 2023 U.S. App. LEXIS 24352, at *8 (5th Cir. Sep. 13, 2023) (affirming a punitive damages award where an employer fired a mother and her daughter after the mother complained about sexual harassment.) (unpublished opinion).

Maintenance Supervisor Dallin Hansen acted with malice or reckless indifference when he engaged in harassing conduct towards Budd.[7] Hansen was the only manager onsite where Budd worked. Budd will testify that Hansen made several sexual comments towards her such as making sexual jokes about screws and lubricant, telling Budd "I need you to find my shaft" while asking Budd to locate a part, and asking Budd if she liked leather and whips. On one occasion, Hansen insinuated that Budd could make extra money for the company by engaging in prostitution while

---

[7] Although it is undisputed that Hansen was not Budd's supervisor, Hansen had managerial capacity, meaning his actions are imputed onto Defendant for the purpose of analyzing punitive damages. When analyzing whether an employee serves in a managerial capacity, courts consider "the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done[,] and how it is accomplished." *See Kolstad*, 527 U.S. at 543 (citation omitted). This Court also considered whether the employee could "hire, fire, demote, promote, discipline, and supervise other employees." *EEOC v. Serv. Temps, Inc.*, Civil Action No. 3:08-CV-1552-D, 2010 U.S. Dist. LEXIS 130191, at *23 (N.D. Tex. Dec. 9, 2010) (Fitzwater, S.). This Court previously held an employer was liable because the bad actor had the power to make hiring decisions and supervise other employees, though it was disputed whether this individual was the plaintiff's supervisor. *Id.* at *24. Hansen testified in his deposition that he supervised all mechanics at the DFW location, issued performance evaluations and disciplinary actions, and made hiring decisions.

on a business trip. Budd will also testify that Hansen witnessed mechanics he supervised make sexually offensive comments and did nothing to stop it.

Budd's direct supervisor, former Parts Manager Dustin Widmer acted with malice or reckless indifference when he received several complaints from Budd about harassing conduct that he ignored. EEOC anticipates Budd will testify she first complained to Widmer on September 4, 2019. Budd told Widmer that the mechanics made her feel uncomfortable, she felt unsafe, and that her coworkers were making sexual jokes. Widmer does not dispute receiving this complaint. He admitted that he asked no questions to find out specifics about the comments that were making Budd feel unsafe and uncomfortable and that he did nothing in response. In fact, Budd will testify Widmer discouraged her from escalating her complaint because it would put a target on her back. Budd complained a second time to Widmer on December 11, 2019, this time via email where she described the work environment as salacious and asked to work part time as a result. Widmer did not respond to this email. Budd complained a third time to Widmer on December 14, 2019, again via email, where she provided graphic examples of her coworkers' harassing conduct. Widmer forwarded the email to Employee Relations Manager Kelley Dehais but did not respond to Budd. Budd then went over Widmer's had filed a complaint in Defendant's online portal.

Dehais acted with malice or reckless indifference when she failed to adequately respond to Budd's concerns and placed her on a retaliatory, indefinite administrative leave. Dehais was well aware that sexual harassment is illegal under federal law, testifying that part of her role was to help prevent SkyWest from legal liability if employees complained of sexual harassment. Despite this knowledge, Dehais's investigation of Budd's complaint was not reasonably calculated to determine if Budd's work environment was hostile. Dehais started an investigation into Budd's complaints on December 17, 2019, at which point Dehais placed Budd on an administrative leave. During her deposition, Dehais testified that she did not interview all of the individuals Budd

10

accused of contributing to or witnessing the hostile work environment and did not follow up with employees that heard sexual remarks for details. Dehais concluded her investigation, finding that four employees had engaged in conduct that violated SkyWest's sexual harassment policy. However, only three of those employees were notified of this and received a corrective action. The fourth employee was never told his behavior violated SkyWest's policy against harassment. Even though Dehais completed her investigation by February 2020, she never notified Budd of the conclusion of her investigation or the results. Budd remained on administrative leave for the duration of her employment. It is undisputed that neither Dehais, nor any of Defendant's employees, provided Budd a return-to-work date even after Budd sought clarity on the topic on May 21, 2020. Even then, Dehais did not take any action to train employees or to alleviate the hostile work environment until February 2023.

### III. Conclusion

Budd is entitled to both compensatory and punitive damages. Budd and Dr. Samuelson will testify to the varying degrees of harm Budd suffered because of Defendant's hostile work environment. Budd should be treated as an eggshell plaintiff because Budd's response to the harassing conduct she endured at work was exacerbated by her history of sexual trauma, which Budd and Dr. Samuelson will testify to. Budd is not required to mitigate her emotional distress because Title VII does not prescribe a duty to mitigate compensatory damages. Further, Defendant engaged in several instances of malice and reckless indifference such as Hansen engaging in harassing conduct, Widmer ignoring Budd's complaints, and Dehais failing to adequately respond to Budd's complaints and retaliating against her. For the foregoing reasons, awards for compensatory and punitive damages are appropriate in this case.

Respectfully submitted,

ROBERT A. CANINO
Regional Attorney

Oklahoma Bar No. 011782

ANN HENRY
Acting Supervisory Trial Attorney
Illinois ARDC No. 6272394

/s/ Alexa Lang
ALEXA LANG
Trial Attorney
Texas Bar No. 24105356

BROOKE LÓPEZ
Trial Attorney
Texas Bar No. 24125141

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Dallas District Office
207 South Houston, 3rd Floor
Dallas, Texas 75202
(972) 918-3611
(214) 253-2749 FAX