## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **Civil Action No. 3:22-cv-01807-C** |
| **SKYWEST AIRLINES, INC.,** | § § § | |
| *Defendant.* | § | |

### INTEVENOR PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT FOR REASONABLE FEES AND COSTS

**TO THE HONORABLE JUDGE FITZWATER:**

Pursuant to 42 U.S.C. §§ 1988(b) and 2000e-5(k), FED. R. CIV. P. 54(d)(2)(A), and the judgment in favor of the Equal Employment Opportunity Commission ("EEOC") and Sarah Budd ("Budd")(Doc. 150), Ms. Budd as the prevailing party moves for an award of reasonable attorney's fees and costs (including the costs that are recoverable under 28 U.S.C. § 1920 on a bill of costs) incurred in the successful pursuit of her action.

### 1.    The Attorney's Fees

A prevailing party in a Title VII action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); see 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter[,] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs ...."). A prevailing party is the party that "succeed[s] on any significant issue in litigation which achieves some . . . benefit [to] the part[y] bringing suit." *Hensley*, 461 U.S. at 433. Given the

jury's verdict in the EEOC and Budd's favor, it is undisputed that she is a prevailing party. *Flores v. Va. Dep't of Corr., Civil Action* 5:20-cv-00087, at *20 (W.D. Va. Sep. 27, 2023)

Ms. Thomas has represented Ms. Budd since December 2018 to address the discrimination and harassment she experienced at SkyWest Airlines.   At the outset, Ms. Thomas developed the facts and law of Ms. Budd's case and engaged in early settlement negotiations.   Thereafter, Ms. Thomas filed a charge of discrimination on Ms. Budd's behalf with the Equal Employment Opportunity Commission and represented her at the EEOC mediation.   She presented the facts of case to the EEOC, responded to EEOC inquiries, and was instrumental in getting the EEOC to act on Ms. Budd's charge. This representation of Ms. Budd's interest continued through trial and throughout the litigation, where undersigned counsel represented Ms. Budd as the intervenor plaintiff.   Ms. Thomas actively participated in all aspects of litigation, including assisting in responding to discovery, co-counseling with the EEOC on deposition strategy, providing input and editing to filed motions and briefs, and coordinated with the EEOC on trial tasks to avoid unnecessary duplication of tasks. (App. 277-279, ¶ 6-16).

Ms. Budd, as the intervenor, was the prevailing party at trial.  The right to intervene is written into Title VII: "The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision." 42 U.S.C. § 2000e-5. At the prevailing party, Ms. Budd is entitled to her reasonable attorneys' fees and costs.

Title VII of the Civil Rights Act of 1964 ("Title VII") empowers a court to award a "prevailing party, other than the Commission or the United States," to recover reasonable attorney's fees (including expert **fees**) in an action under 42 U.S.C. § 2000e-5. 42 U.S.C. §§ 2000e-

5(k). A plaintiff is "a "prevailing party" if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978)). If the plaintiff wins on some but not all claims they have met the threshold for an award. *Id.* It remains for the Court to determine what fee would be "reasonable". *Id.* A court can calculate a reasonable fee by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *Id.*

An intervenor in an EEOC case may be treated as a "prevailing party" for purposes of awarding attorney's fees. *EEOC v. Sage Realty Corp., 521 F. Supp.* 263, 269 (S.D.N.Y. 1981). The EEOC and the private plaintiff remain free to decide who should take primary responsibility for the case, but "must take every reasonable effort to ensure that they do not unnecessarily duplicate work done." *Id. United States EEOC v. Norval Elec. Coop., Inc.*, No. CV-19-71-GF-BMM, 2024 U.S. Dist. LEXIS 200175, at *4-5 (D. Mont. Nov. 4, 2024).

To calculate those fees, the Supreme Court has established a ""strong presumption"" that the lodestar—the product of multiplying hours reasonably expended by a reasonable hourly rate—represents "the reasonable fee" for prevailing parties, *Perdue v. Kenney A.*, 559 U.S. 542, 553-54, 130 S. Ct. 1662, 1673 (2010), which is to say a fee that roughly approximates what an attorney would have received if representing a client who paid by the hour. *Perdue*, 559 U.S. at 551. The *Perdue* Court contrasted the lodestar method with one the Fifth Circuit "set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (C.A.5 1974), which listed 12 factors that a court should consider in determining a reasonable fee." *Perdue*, 559 U.S. at 550-51. (The *Johnson* factors are listed *infra* at p. 7.) The *Perdue* Court's reasoning clearly indicates a strong preference

for the lodestar method over the *Johnson* factors: "This method, however, 'gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue*, 559 U.S. at 551. Post-*Perdue*, the Fifth Circuit has treated the *Johnson* factors as a complement to the lodestar. *See*, *e.g.*, *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) ("[t]hough the lodestar is presumed reasonable, … the court may enhance or decrease it based on the … Johnson factors"); *Amawi v. Pflugerville Indep. Sch. Dist.*, 2021 WL 1226569, at *6-7 (W.D. Tex. March 13, 2021) (Pitman, J.); *Mohammadi v. Nwabuisi,* 2017 WL 4820364, at *2 (W.D. Tex. Oct. 24, 2017) (Pitman, J.).

Further, the prevailing plaintiff is entitled to costs. While it is expected that the EEOC will separately file a bill of costs for taxable costs, Ms. Budd is entitled to reasonable costs associated with counsel's representation of her. "Nontaxable costs are recoverable along with attorney's fees on a motion under Rule 54(d)(2) unless federal law provides otherwise." *Black v. Pan Am. Laboratories*, LLC, A-07-CV-924-LY, 2012 WL 12950044, at *2 (W.D. Tex. Feb. 15, 2012) (citing Fed. R. Civ. P. 54(d)(2) (allowing "related nontaxable expenses" in a claim for attorney's fees). Consistent with that approach, this memorandum discusses the Perdue lodestar fee first and then the Johnson factors.

## 2.    <u>The Hours Reasonably Expended</u>

Along with this fee petition, counsel for Plaintiff is submitting detailed time records that were kept contemporaneously during the pendency of this case, both pre and post-suit. "[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for

noncompensable hours ...'" *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). Billing records are "not required 'to describe in excruciating detail the professional services rendered for each hour or fraction of an hour.'" *Mohammadi v. Nwabuisi,* 2016 WL 9450697, at *4 (W.D. Tex. June 13, 2016) (Pitman, J.). Records are adequate if they exhibit "sufficient specificity and clarity for the court to make a reasonable inquiry as to whether the hours appear to be excessive or duplicative." *Id.*

The work performed by Ms. Thomas was essential to the successful prosecution of this case and was neither excessive nor duplicative. (App. 278, ¶ 7-9, Thomas 16-18,  App. 274  9-13). Throughout the pendency of the lawsuit, Ms. Thomas worked in close coordination with the EEOC to develop effective strategies, respond to discovery requests and motions, and divide tasks in a manner that maximized efficiency. *Id.* Regular discussions between counsel ensured that all efforts were well-aligned and minimized unnecessary overlap. *Id.*

To prevent duplicative efforts, the EEOC took the lead on many discovery and briefing tasks, with plaintiffs filing a single set of responsive briefing for motions. (App. 278 ¶8). Plaintiffs and the EEOC regularly conferred and exchanged research and drafts to streamline the litigation process. *Id.*

As counsel for Ms. Budd, Ms. Thomas's presence was critical at depositions and other pivotal case events, even when depositions were conducted by the EEOC. (App. 278 ¶9).  Her role in conferring with the EEOC attorney during depositions ensured that questioning was thorough and preserved error, demonstrating her active and necessary participation. (App. 278, ¶ 9).

Ms. Thomas was actively involved in early attempts to resolve the case, including representing plaintiffs during mediation and subsequent settlement discussions. (App. 278, ¶10).

These efforts were necessary to explore potential resolutions, although settlement ultimately proved unsuccessful. (App. 278 ¶10).

Ms. Thomas's involvement ensured continuity during tasks related to expert witnesses, particularly during a period when co-counsel was unavailable. (App. 279 ¶11). Her work prevented delays and additional continuances, underscoring its necessity to the case's progression. *Id.*

Ms. Thomas's considerable litigation and trial experience made her co-lead role at trial contributed to the success of this case. (App. 279 ¶11-15). Trial responsibilities were carefully divided to avoid duplicative work, with Ms. Thomas and co-counsel preparing and examining different witnesses or conducting follow-up questioning as needed. (App. 279 ¶13). Her contributions directly supported the successful presentation of the case. (App. 279 ¶15, App. 275 ¶12-14).

All of the time expended by the attorneys and paralegals of Zipin, Amster & Greenberg, LLC for which Plaintiff seeks compensation is set forth in detail in Exhibit 1A. (Exhibit 1, Attachment A). Billing entries were recorded contemporaneously with the work performed, and the billing statement identifies the amount of time expended, the tasks performed, the given timekeeper's hourly rate  (*Id.*)

Further, undersigned Plaintiff's counsel has reviewed the billing statement generated in this matter and cut any excessive, duplicative, or unnecessary work performed. (*Id.*) The fees submitted by Plaintiff are those that counsel, in the exercise of their billing judgment, and after making a good-faith evaluation of all recorded hours of work performed in relation to Plaintiff's case, finds to be fair and reasonably necessary to the litigation. (*Id.*)  The fees presented do not include time that the Firm would not otherwise charge if Plaintiff was an hourly paying client. (*Id*.) As set forth in Ex. 1,

the Firm cut over 15 hours of time. However, many of hours Firm devoted to this matter were never

included, so were not cut. After making these cuts and applying the appropriate hourly rates to the

hours reasonably expended by each attorney or paralegal who contributed to the successful

prosecution of Plaintiff's claims, the total fees are $225,590.

### A. SkyWest made a strategic decision to aggressively defend this case.

The EEOC and Ms. Budd's case was contentious and required significant litigation efforts,

including depositions, motion practice, and trial preparation. Ms. López from the EEOC provided a

declaration to Intervenor's counsel attesting to vigorous defense presented by SkyWest, stating that

"[o]f the lawsuits I served as counsel, this lawsuit was one of the most contentious cases and heavy

in motion practice." (López paragraph 8.) Indeed, there are over 150 docket entries in this case.

SkyWest's defense team asserted approximately multiple defenses, including claims of laches,

waiver, estoppel, and unclean hands, along with allegations that Ms. Budd's complaint was

"frivolous and groundless" and contained "blatantly false claims." (App. 18-19, ¶18).

The defense sought an independent medical examination of Ms. Budd, a highly unusual

demand in employment cases, which required significant preparation and consumed a full day.

Furthermore, SkyWest took numerous depositions, excluding expert depositions, far exceeding the

norm in similar cases. (App. 18-19, ¶18). This required Ms. Thomas to dedicate extensive time

and resources to preparation and participation in these depositions. (App. 278, ¶9).

SkyWest was entitled to this litigation strategy, but courts have recognized that zealous

litigation strategies by Defendants often increase costs, which must be considered when evaluating

fee reasonableness. *Robinson v. Nexion Health at Terrell Inc.,* 3:12-CV-3853-L-BK, 2017 WL

5891790, at *8 (N.D. Tex. Nov. 1, 2017), report and recommendation adopted, 3:12-CV-3853-L,

2017 WL 5714795 (N.D. Tex. Nov. 28, 2017).

**B. Intervenor counsel was required to actively participate in litigation.**

Ms. Budd retained Ms. Thomas prior to filing a charge with the Equal Employment Opportunity Commission (EEOC) to address the discrimination and harassment she experienced at SkyWest Airlines. (App. 290, ¶16-18). Ms. Thomas assisted Ms. Budd in drafting and filing the charge of discrimination, ensuring that it comprehensively presented the facts and circumstances of her claims. *Id.* This pivotal step enabled the EEOC to act on Ms. Budd's charge and initiate its investigation. *Id.* Ms. Thomas' diligent efforts in engaging with the EEOC included responding to inquiries, providing additional evidence as needed, and representing Ms. Budd during a pre-litigation mediation. *Id.*

After the EEOC issued a cause determination in this case and then filed suit in August of 2022, Ms. Thomas served an important role throughout the litigation. Serving as co-counsel, Ms. Thomas' effectively managed discovery disputes, addressed emergency motions, and prepared for trial. (App. 274-275, ¶7-14).  Ms. Thomas also participated and coordinated responses to all discovery, especially those directed to Ms. Budd as the intervenor-plaintiff. Ms. Thomas worked on pre-trial disclosures, voir dire, witness examinations, and trial arguments. *Id.*

The results of the case underscore the effectiveness of Ms. Thomas' representation. As Mr. Wiley noted, Ms. Budd prevailed in trial, securing a jury finding damages exceeding statutory caps. (App. 24, ¶26). This result, which garnered national attention, demonstrates the preparation and skill Ms. Thomas brought to this litigation. (App. 24, ¶26).

**C. Approximately 400 hours is reasonable for an attorney in an employment case.**

The number of hours, slightly over 400, sought for work performed by Ms. Thomas and

other paralegals and attorneys at Zipin, Amster, and Greenberg are reasonable. (App. 291, ¶19-24).As noted by experts familiar with employment litigation, the time and labor required to successfully prosecute such cases often involve hundreds, and in some cases thousands, of hours. (App. 16-18, ¶¶15-18). For example, in *Miniex v. Houston Housing Authority*, No. 4:17-cv-00624, Doc. 277, the court deemed 2,423 hours over a two-year period for a single-plaintiff employment case that concluded with a jury trial were reasonable. Similarly, in *Johnson v. Southwest Research Institute*, No. 5:15-cv-297 (W.D. Tex. Aug. 23, 2019, Doc. 138-1), 1,178.4 hours were found reasonable for a case that also culminated in a jury verdict. (App. 16-17, ¶16).

The complexity and demands of employment cases, particularly those involving years of workplace conduct and extensive discovery disputes, often necessitate significant time and labor. (App. 16, ¶15). These cases frequently require attorneys to master a detailed understanding of long-term employment relationships and address extensive discovery disagreements, as employers often control much of the evidence. (App. 16, ¶15).

Ms. Thomas's role as intervenor counsel required her to navigate not only her client's individual interests but also the broader goals of the EEOC. (App. 13, ¶10). This dual responsibility necessitated careful strategy and additional effort to align her work with the government's prosecution while protecting her client's distinct interests. *Id.* Serving as counsel for an intervenor in an EEOC case often requires additional tasks outside those performed by the EEOC, such as responding to discovery directed specifically at the intervenor, adjusting strategy based on the EEOC's actions, and ensuring jury instructions and trial preparation reflect the intervenor's specific claims. (App. 13, ¶10, App. 275 ¶11).

The approximately 400-hour figure is consistent with a quality-based efficiency standard and

aligns with the demands of the case, the aggressive defense tactics, and the complexities of representing an intervenor in a government-led litigation.

### D. Intervenor counsel has attached detailed time records.

Exhibits accompanying Ms. Budd's fee motion include detailed billing records presented in chronological order. Counsel's declaration attests to the reliability of these records and compliance with local rules. Reductions reflecting billing judgment are explicitly noted in Exhibits 3A and 3B, demonstrating that unproductive or redundant time was excluded.

### 3.    The Reasonable Hourly Rate

Once the compensable time is determined, the Court's second step is to determine a reasonable hourly rate "according to the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984), i.e., "in the community in which the district court sits." Mohammadi, 2017 WL 4820364, at *3. "'Generally, the reasonable rate for a particular community is established through affidavits of other attorneys practicing there.'" *Id*. (quoting *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

The primary attorney timekeeper for whom Plaintiff seeks compensation is Ms. Edith Thomas, and Plaintiff seeks reimbursement for administrative time for two paralegals plus time expended by ZAG partner Michael Amster

Ms. Thomas was admitted to the bar in Maryland in 2004, the District of Columbia in 2006, and Texas in 2007. Ms. Thomas served as a Board Member of the Texas Employment Lawyer Association from 2017 to 2021 and has presented at its annual meeting. She has been Board-Certified in Labor and Employment Law by the Texas Board of Legal Specialization since 2014. Her professional recognition includes being named a Rising Star by *Super Lawyers* from 2013 to

2015 and a Super Lawyer from 2019 to 2022. (App. 286-287, ¶3-6).

In addition, Ms. Thomas has an extensive record of success and a distinguished reputation in the litigation of employment law cases. (App. 286-287, ¶4). Her skills and qualifications are evidenced by the following accomplishments in the last two years alone:

- o *Sanchez Sanchez v. Ultimo, LLC*, No. 1:19-cv-03188 (D.D.C.): Served as co-counsel in a federal bench trial, resulting in a $448,410 damages verdict.

- o *Butler et al. v. Winterfeldt*, No. 2024-CAB-003837 (D.C. Super. Ct.): Obtained a default judgment of $418,961.68 for four clients.

- o *William Sparrow v. Washington Metropolitan Area Transit Authority*, No. 1:22-cv-2216 (D.D.C.): Successfully defeated summary judgment for most claims in a Title VII and Equal Pay Act case.

- o *Maria Cruz Sanchez Gomez v. Red Coats, Inc.*, No. 2022-CA-001011 (D.C. Super. Ct.): Defeated summary judgment for most claims in a sexual harassment case.

- o *Diaz Mancilla v. Chesapeake Outdoor Services, LLC*, No. 1:22-cv-00032-JMC (D. Md. 2024): Played a key role in motion practice in a case that was successfully tried.

(App. 283 ¶3, Thomas).

Ms. Thomas has represented clients as first or second chair in over 100 cases filed in court, including approximately 60 federal employment cases plus numerous state court cases in Texas, Maryland, the District of Columbia, and Virginia (pro hac vice). This includes representation of clients in jury trials, administrative hearings, evidentiary hearings, arbitration proceedings, and motion practice in state and federal court, and she has practiced employment law almost exclusively since 2008. (App. 283 ¶4, Thomas).

Ms. Thomas primarily manages her own docket at ZAG. She leads and assists with negotiating settlements, taking and defending depositions, and takes the lead in drafting and responding to complex motions in state and federal court. (App. 283 ¶6, Thomas).

Based on this experience, the requested hourly rate for Ms. Thomas's time and Michael Amster's time is $550, and the requested hourly rate for paralegal time is $90 per hour.[1]   The requested rate of $550 is supported by testimonial evidence from Dallas-based practitioners and ZAG partner Michael Amster. (Exhibits 1-6).

In support of this hourly rate, Attorney Kyla Cole has provided a declaration that is attached as an exhibit to this motion. As described below, Ms. Cole and Ms. Thomas have a similar background and experience, and Ms. Cole's most recent hourly rate approved in an arbitration by a former United States Magistrate for the Northern District of Texas was $550.00 in 2021. (App. 5, ¶ 12, App. 74).

 Ms. Cole primarily worked in employment and labor cases on employees or personal injury cases on behalf of Plaintiffs. (App. 1-5).  Ms. Cole has conducted numerous depositions, mediations, hearings and court appearances in employment law matters. (App. 3-5, ¶5-11). Ms. Cole has also participated as first or second chair in multiple arbitration hearings, administrative hearings and trials. (App. 5, ¶ 11). Ms. Thomas and Ms. Cole graduated from the University of Texas in the late '90s, and both graduated from law school in the early 2000s. (App. 2, ¶4, Thomas paragraph 3). Both Ms. Cole and Ms. Thomas have primarily practiced plaintiff side employment law throughout their careers. (Thomas 3, App. 2-3, ¶5-9).

James Sanford, who also practices employment law in Dallas, and with whom undersigned counsel practiced with at Gillespie, Rozen, and Watsky, has also completed a declaration attesting

---

[1] The rate of $90per hour is comparable to rates awarded for paralegal work in other cases by this court. See e.g.  *Arriaga v. Califco, LLC , 2013 WL 5928852, at *1 (N.D. Tex. Nov. 5, 2013)* (Fitzwater, C.J.) (holding that $90 per hour was reasonable rate for paralegal) cited *in Williams v. Sake Hibachi Sushi & Bar Inc.,* 574 F. Supp. 3d 395, 411 (N.D. Tex. 2021)(Fitzwater, C.J.).

that the rate of $550 per hour is reasonable in a contingency case like this. Mr. Sanford additionally testified to Ms. Thomas's qualifications. (App. 367-389).

In addition, in support of this motion, Plaintiff's counsel submits a declaration from David Wiley. David Wiley is an exceptional employee-side employment attorney based in Dallas, Texas, whose career reflects a profound dedication to advancing workers' rights and achieving justice in the workplace. With extensive trial experience, Mr. Wiley has successfully represented clients across Texas, from low-wage workers to executives, in employment disputes involving wage violations, discrimination, harassment, retaliation, and breaches of employment agreements.

Mr. Wiley's courtroom accomplishments are extraordinary, including co-winning an $8.5 million jury verdict in *Jackson v. Granbury SNF LLC, et al.*, a retaliation case for a social worker fired from a skilled nursing facility. This verdict was recognized by *TopVerdict.com* as the #1 wrongful termination and whistleblower retaliation verdict in Texas in 2023 and one of the Top 20 labor and employment verdicts nationwide. In another case, *Carter v. City of Abilene*, Wiley secured a $2 million whistleblower retaliation jury verdict against the City of Abilene. (App., 14, ¶12).

Beyond his litigation successes, Mr. Wiley is a leader in the legal community. From 2009 to 2023, he served on the governing council of the State Bar of Texas Labor and Employment Law Section, including two terms as Chair Emeritus. His contributions have included planning annual continuing legal education (CLE) programs and awarding grants to support pro bono efforts and legal scholarship in employment law. (App., 15, ¶3).

Mr. Wiley's strategic advocacy, deep legal knowledge, and unwavering commitment to his clients have earned him a reputation as one of the most accomplished and trusted employment lawyers in Texas.

The requested hourly rate for Ms. Edith Thomas is reasonable and well-supported by prevailing market rates for employment law attorneys in Texas, particularly in the Dallas area. If anything, the requested rate is low. (App. 32-33, ¶36).  These rates have been documented extensively in the 2023 Attorneys' Fees Hourly Rate Yearbook for Labor and Employment Law, published by the Texas Employment Lawyers Association. (App. 32-33, ¶36, App. 35-264; App. 5-6, ¶13). This yearbook, which compiles data from court rulings, jury verdicts, arbitrations, testimony, and actual billing practices, provides a reliable and transparent analysis of rates for labor and employment law attorneys across Texas. (App. 23, ¶25). Unlike anonymous surveys, the yearbook names specific attorneys, includes their rates, and cites sources, ensuring a comprehensive and accurate depiction of market conditions. (App. 23, ¶25).

The yearbook categorizes hourly rates by experience level, geographic regions corresponding to Texas's federal districts, and adjusts older rates for inflation up to the end of 2022 using data from the U.S. Bureau of Labor Statistics for legal services. (App. 23, ¶25). It contains information for over 350 attorneys and more than 100 fee awards.  (App. 23, ¶25). Although it has not been updated for the 6.23% increase in legal service prices during 2023, as reported by the Bureau of Labor Statistics, it remains a robust resource for understanding the prevailing market rates in 2024. (App. 23, ¶25).

Ms. Thomas' requested rate is consistent with the directives of *Blum v. Stenson*, 465 U.S. 886 (1984), which require consideration of "prevailing market rates in the relevant community." Courts have repeatedly recognized the value of actual rates charged or awarded in determining reasonable fees. The 2023 yearbook specifically focuses on labor and employment law, ensuring its relevance to Ms. Thomas' work as intervenor counsel in *EEOC v. SkyWest*. (App. 23, ¶25).

While Texas courts have occasionally referenced the State Bar of Texas's hourly rate survey, the State Bar explicitly disclaims the survey's use for determining reasonable fees in litigation:

> In order to streamline the survey, hourly rate information is no longer collected. Past hourly rate reports were not designed for nor intended to be used for setting appropriate attorney fees. Other factors should be considered in determining attorney hourly rate fees that are outside the scope of these reports.[2]

The evidence demonstrates that Ms. Thomas's requested rate is consistent with prevailing market rates for attorneys of similar experience in the Northern District of Texas. Based on the testimonial evidence, the TELA report, and Ms. Thomas's qualifications, the Court should find the requested hourly rate of $550 reasonable for calculating the lodestar fee.

The presumptively correct lodestar fee is:

| Timekeeper | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Edith Thomas | 406.8 | $550 | $223,740 |
| Michael Amster | 2.3 | $550 | $1265 |
| Paralegal Time | 6.5 | $90 | $585 |
| **Lodestar Fee** | | | $225,590 |

---

[2] Judge Montalvo in *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immig. & Customs Enforcement* rejected reliance on the state bar rate survey because of this disclaimer. 2021 WL 289548, at *12 (W.D. Tex. Jan. 28, 2021) ("[t]ellingly, the Texas Bar itself warns against using the Fact Sheet to set attorney fees"). That disclaimer is not empty verbiage: courts have acknowledged  the state bar rate survey to be unreliable. *See*, *e.g.*, *Diocesan Migrant*, 2021 WL 289548 (favorably citing expert statistician: it "suffered from the fatal defects of a limited sample size, selection bias, and suboptimal methodology," and "does not reliably reflect the hourly rates of attorneys in Texas"); *Miniex v. Houston Hous. Auth.*, 2019 WL 4920646, at *4 (S.D. Tex. Sept. 13, 2019) ("[t]he Court is unpersuaded that the median rates for labor and employment lawyers in the 2015 SBOT survey is a reliable gauge for reasonable hourly rates").

1.    The *Johnson* Factors

Although the lodestar is presumed to be the reasonable fee, considering the *Johnson*

factors may, in some cases, persuade the Court to provide an upward or downward adjustment

of fees (*see supra* pp. 1-2). However no adjustment may be made based on a *Johnson* factor

that has already been considered in setting either of the lodestar components (the reasonable

hours or the reasonable rates); *Black*, 732 F.3d at 502 ("[t]he lodestar may not be adjusted due

to a *Johnson* factor that was already taken into account during the initial calculation of the

lodestar"); *Mohammadi*, 2016 WL 9450697, at *6 (agreeing with defendant that "[t]he issues

presented in this case were not exceptionally novel," but rejecting a downward adjustment on

that basis: "[T]he Court does not believe a that a downward adjustment is appropriate simply

because a case raises only conventional legal questions. Moreover, in its assessment of the

reasonableness of the number of hours billed, the Court already accounted for the novelty and

difficulty of the cases. Accordingly, the Court will not adjust the lodestar on the basis of this

factor.").[3]

While the lodestar fee already captures all of the *Johnson* factors relevant to setting a

reasonable fee for this action, Plaintiff will briefly address the *Johnson* factors. Additionally,

Undersigned counsel cut any excessive, duplicative, or unnecessary work performed. (App. 290-

291, ¶18-23). The *Johnson* factors are as follows:

---

[3] This observation is consistent with one that the Supreme Court has twice repeated. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553, 130 S. Ct. 1663, 673 ("the novelty and complexity of a case … 'presumably [are] fully reflected in the number of billable hours recorded by counsel"); *Blum v. Stenson*, 465 U.S. 886, 898, 104 S. Ct. 1541, 1549, 79 L. Ed. 2d 891 (1984) ("[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel ….").

(1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) ... ;[4] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

### A.  Time and Labor required

Undersigned counsel represented Ms. Budd with judicious efficiency.  However, the time and labor required in this matter was increased due to the contentious nature of this litigation. As detailed above, this case is unusual in the amount of time required. This is in no small part due to SkyWest's litigation tactics.

### B.  Novelty and difficulty of the questions

The case also involved challenging legal and factual issues, including whether SkyWest had actual or constructive notice of the harassment, the timeliness and adequacy of its remedial actions, and proof of harassment that occurred years before the trial. The presentation of these issues required overcoming nuanced juror biases often associated with sexual harassment cases, and these juror bias may not exist in commercial or intellectual property litigation or wrongful death cases. (App. 20-21, ¶21).  This complexity is nuanced and compounded by the socially sensitive and evolving cultural context surrounding workplace harassment and the #MeToo movement.  For example, some survey results suggest that "27% of men say that harassment is decreasing. And 50% of men say that the consequences are more damaging to the careers of harassers, not victims." https://leanin.org/sexual-harassment-backlash-survey-results#! There is a documented backlash to the #metoo movement in recent years: https://hbr.org/2019/09/the-metoo-backlash. (App. 20-21,

21).

### C. Preclusion of other employment by the attorney and the experience, reputation, and ability of the attorneys.

The *Johnson* factors allow courts to adjust an attorney's hourly rate based on various considerations, including the preclusion of other employment by the attorney due to acceptance of a case. This factor strongly supports the reasonableness of the requested hourly rate for Ms. Edith Thomas, as her representation of the plaintiff in *EEOC v. SkyWest* necessarily precluded her and her firm, Zipin, Amster, & Greenberg, LLC ("ZAG"), from taking on other matters. (App. 283 ¶4-5, 14).

ZAG is a highly regarded firm specializing in employment law, known for its exceptional advocacy on behalf of employees in matters ranging from wage and hour disputes to high-profile sexual harassment cases. *Id*. The firm's reputation for excellence has earned significant accolades, including partner Phil Zipin being named the 2023 Metropolitan Washington Employment Lawyers Association "Lawyer of the Year" for his work on a sexual harassment case resulting in a $2.25 million judgment and $1.1 million in attorney's fees. (App. 285 ¶13).

Given ZAG's prominence and the volume of potential clients seeking representation, the firm carefully selects the cases it accepts. (App. 283 ¶4). This selectivity ensures that each client receives the highest level of personalized attention and strategic advocacy, but it also means that every accepted case displaces other opportunities. (App. 283, 285 ¶¶5,14). ZAG has successfully represented thousands of clients, recovering millions of dollars in judgments and settlements. (App. 285 ¶3). However, to maintain this level of quality, the firm limits its caseload, resulting in significant opportunity costs for each matter it undertakes. (App. 283 ¶5).

Ms. Thomas, who joined ZAG in 2022, has been a critical asset to the firm.    Her

accomplishments include significant verdicts and settlements, defeating dispositive motions in discrimination and harassment cases, and managing a docket of cases.(App. 284-285, ¶¶9-11). Her practice has focused almost exclusively on employment law since 2008, and her expertise in navigating complex workplace dynamics and presenting compelling narratives has made her an exceptionally skilled litigator. *Id.*

In addition to her current contributions to ZAG, Ms. Thomas's positive reputation in Texas is supported by declarations from David Wiley and the EEOC attorneys in Texas who worked alongside her in this litigation. (see declarations of David Wiley, Alexa Lang, and Brooke López App. 001-280.).  In his declaration, David Wiley states that "[i]n my opinion, Edith Thomas is an excellent lawyer." (App. 24-25, ¶27).  Through this case, both Ms. Lang and Ms. López  and Ms. Lang are familiar with Ms. Thomas's skills and qualifications, and have attested that Ms. Thomas is "highly qualified and knowledgeable in the area of employment law." (App. 279 ¶14, App. 275 ¶14). EEOC supervisory attorney Ann Henry also signed a declaration attached as Exhibit 7 attesting to Ms. Thomas's contributions to the litigation and agreed that Ms. Thomas is highly qualified and knowledgeable in employment law. (App. 364-367).

The *SkyWest* case exemplifies the type of matter that demands an intensive commitment of time and resources. (App. 285 ¶¶12-14). The firm undertook this case on a contingency basis, bearing all the financial risks and expending significant professional time and costs. *Id.* The preclusion of other employment is particularly significant here, as ZAG's attorneys, including Ms. Thomas, must dedicate substantial time to each case they accept to achieve the firm's high standards of representation. *Id.* By accepting this matter, the firm necessarily declined opportunities to represent other clients, underscoring the substantial opportunity costs incurred. *Id.*

In light of the firm's selective practice, Ms. Thomas's expertise, and the demands of this case, the preclusion of other employment strongly supports the reasonableness of the requested hourly rate. *Id.*

**D.  The results in this case were outstanding.**

Plaintiff received excellent results in this matter.  Ms. Budd could not have recovered more, as the award given to her by the jury exceeded all caps. If anything, these results  merit an upward adjustment of undersigned counsel's lodestar.  While Ms. Thomas is not seeking such upward adjustment, such an adjustment may be considered as a counterbalance to any time that may otherwise be cut.

"When a plaintiff obtains 'excellent results, his attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]'" *Castro v. Precision Demolition LLC,* Civil Action No. 3:15-CV-0213-D, 2017 U.S. Dist. LEXIS 205355, at *26-27 (N.D. Tex. Dec. 14, 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11 (1983). "[I]t is not 'necessarily significant that a prevailing plaintiff did not receive all the relief requested.'" *Id.*

The jury returned a verdict in favor of Plaintiff. Ms. Budd was awarded $170,000 in compensatory damages and $2,000,000 in punitive damages. (Doc. 151). This case has been reported in multiple national and local news outlets.[4]  The Plaintiffs' success at trial and their

---

[4] See e.g. Patrick Dorrian, *SkyWest Liable for Sexual Harassment of Parts Clerk, Jury Says*, Bloomberg Law (Nov. 21, 2024), https://news.bloomberglaw.com/daily-labor-report/skywest-liable-for-sexual-harassment-of-parts-clerk-jury-says.; Bruce Tomaso, *Judge Cuts $2.17M Jury Award in SkyWest Airlines Sexual-Harassment Case to $300K, as Prescribed by Law*, Bloomberg Law (Nov. 20, 2024), https://news.bloomberglaw.com/daily-labor-report/judge-cuts-2-17m-jury-award-in-skywest-airlines-sexual-harassment-case-to-300k-as-prescribed-by-law;            Emilie Shumway, *Jury Delivers $2.17M Judgment Against SkyWest Airlines for Sex Discrimination*, HR

substantial monetary award is precisely the kind of excellent result that merits an award of their full lodestar, especially considering that defense counsel is fully paid for all of their time despite not prevailing. After all, fee-shifting statutes aim to attract competent counsel by "approximat[ing] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010). Therefore, no reduction based on "limited success" is warranted.

### 4.    The Prevailing Plaintiff's Costs and Nontaxable Expenses

The "reasonable attorney's fee" required for prevailing plaintiffs under Title VII includes "reasonable out-of-pocket expenses incurred by the attorney that are normally charged to a fee-paying client." *Mota v. Univ. of Tex. Hous. Health Sci. Cent.*, 261 F.3d 512, 529 (5th Cir. 2001) (quoting *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 557 (5th Cir. 1987)). Expenses such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs are therefore recoverable in Title VII cases. *Id.* as cited in *Davis v. Fort Bend Cty.*, No. 4:12-CV-00131, 2020 U.S. Dist. LEXIS 269241, at *31 (S.D. Tex. Mar. 26, 2020). This interpretation is similar to other fee shifting statutes such as under the Fair Labor Standards Act ("FLSA"). ("Courts in the Fifth Circuit have determined that '[r]eimbursement for travel, meals, lodging, photocopying, long-distance phone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are the types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award.'" *Union P. R.R. Co. v. Am. Ry. & Airway Supervisors' Assn.*, SA-17-CV-00270-XR, 2021 WL 2444957, at *9 (W.D. Tex. June 15, 2021)

---

Dive (Nov. 25, 2024), https://www.hrdive.com.

(quoting *Hilton v. Exec. Self Storage Assocs.*, No. H-06-2744, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009)); (citing *Quintanilla v. A & R Demolition Inc.*, No. H–04–1965, 2008 WL 9410399, at *9 (S.D. Tex. May 7, 2008)).

Attached to her declaration is Ms. Thomas's report of reasonable nontaxable expenses necessarily incurred in this matter, which are customarily charged to fee-paying clients. These costs relate exclusively to travel. Ms. Thomas attests that the requested costs are for items that her firm— and firms in this legal market—would normally charge to fee-paying clients, and were reasonably necessary for the pursuit of this litigation. (App. 290). The Court should award all of them.

In this action, Zipin, Amster & Greenberg expended a total of $5,111.99, with the bulk of those, $4,393.52 spent for the purposes of attending trial. (App. 290).

### 5.     Post-Judgment Interest on the award of fees and costs.

A prevailing party is entitled to post-judgment interest on an award of fees and costs from the date of the judgment on the merits that establishes the right to the award of fees and costs. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 331-32 (5th Cir. 1995). Hence, the Court's order on this motion should provide for interest from the date of the final judgment (November 20, 2024).

### 6.     Supplemental Motion

Ms. Budd may file a supplemental motion to itemize, for example, fees and costs expended in replying in support of this motion, or in opposition to any post-judgment motion the defendant may yet file, including any appeal.

Ms. Budd's lawyer has fully complied with her obligations in seeking fees and costs in this case. She maintained meticulous, detailed, contemporaneous records of her time and

expenses. She has exercised billing judgment and deleted from this request time that was unnecessary, duplicative or unreasonable for any reason. And she has sought billing rates that are consistent with the standard of reasonableness documented in the  supporting declarations of attorneys practicing employment law in the Northern District of Texas as well as providing a detailed accounting of fee awards in other cases.

### 7.    Conclusion

The Court should award fees, costs, and post-judgment interest as set forth below, specifically with attorneys' fees of $225,590 which includes time for an anticipated reply to support this motion and are detailed as follows:

| Timekeeper | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Edith Thomas | 406.8 | $550 | $223,740 |
| Michael Amster | 2.3 | $550 | $1265 |
| Paralegal Time | 6.5 | $90 | $585 |
| **Lodestar Fee** | | | $225,590 |

    a.  Costs (including those in the bill of costs) in the total amount of $5,111.99.

    b.  Post judgment interest on $225,590 from the date of judgment.

Before interest, the total amount requested with costs and fees is $230,701.99.

Respectfully submitted,

*/s/   Edith K. Thomas*
**EDITH K. THOMAS**
TX Bar No. 24060717
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave., Suite 400
Silver Spring, MD 20910
P: (301) 587-9373
F: (240) 428-9142
ethomas@zagfirm.com

*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that on the 4th day of December, 2024, I electronically filed the foregoing document with the Clerk of Court for the Northern District of Texas through the CM/ECF document filing system, which will send notification of the filing to all counsel of record.

            */s/ Edith Thomas*
            Edith Thomas