IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | |
| and | § | Civil Action No. 3:22-CV-1807-D |
| SARAH BUDD, | § § § | |
| Intervenor-Plaintiff, | § § | |
| VS. | § § | |
| SKYWEST AIRLINES, INC., | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

Following a jury trial and entry of judgment in favor of plaintiff Equal Employment

Opportunity Commission ("EEOC") and intervenor-plaintiff Sarah Budd ("Budd"),

defendant SkyWest Airlines, Inc. ("SkyWest") moves for judgment as a matter of law on

punitive damages and for a new trial on compensatory damages, or, in the alternative, for a

new trial on all issues.  EEOC moves for injunctive relief.  For the reasons that follow, the

court denies SkyWest's motion and grants in part and denies in part EEOC's motion.

I

While Budd worked for SkyWest as a parts clerk at Dallas-Fort Worth International

Airport, SkyWest failed to promptly address her complaints that her coworkers were sexually

harassing her by making crude and sexually explicit comments, jokes, and gestures.[1]  EEOC and Budd sued SkyWest under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Title I of the Civil Rights Act of 1991, alleging claims for a hostile work environment and retaliation.  After the court granted summary judgment dismissing part of plaintiffs' retaliation claim, the parties tried plaintiffs' hostile work environment claim and the remainder of her retaliation claim to a jury.

The jury returned a verdict for EEOC and Budd on their hostile work environment claim and against them on her retaliation claim.  The jury awarded $170,000 in past and future compensatory damages, and $2 million in punitive damages, which the court reduced to $130,000 to comply with the statutory cap.

In returning a verdict, the jury necessarily found that SkyWest employees sexually harassed Budd because of her sex; that SkyWest knew, or in the exercise of reasonable care should have known, that Budd was being sexually harassed; that SkyWest failed to take prompt remedial action; that Employee Relations Manager Kelly Dehais ("Dehais"), Parts Manager Dustin Widmer ("Widmer"), or Maintenance Supervisor Dallin Hansen ("Hansen") was aware of, and had authority to remedy, the hostile work environment; that Dehais, Widmer, or Hansen acted with malice or reckless indifference to Budd's federally protected right to be free from working in a hostile environment; and that the alleged sexual harassment was not contrary to SkyWest's good-faith efforts to prevent discrimination in the workplace.

---

[1]The court recounts the background facts favorably to the verdict and the evidence presented at trial.  *See Nesmith v. Alford*, 318 F.2d 110, 120 (5th Cir. 1963).

The court entered judgment on the verdict and also awarded post-judgment interest and taxable costs of court. SkyWest now moves for judgment as a matter of law on punitive damages and for a new trial on compensatory damages, or, in the alternative, for a new trial on all issues. EEOC and Budd oppose the motion, and EEOC moves for injunctive relief, which SkyWest opposes.[2] The court is deciding the motions on the briefs, without oral argument.

II

The court turns first to SkyWest's renewed motion for judgment as a matter of law.

A

At trial, SkyWest moved unsuccessfully for judgment as a matter of law under Rule 50(a) after EEOC and Budd rested their cases, and at the close of evidence, and under Rule 50(b) after the court accepted the verdict. SkyWest now renews its motion on the ground that EEOC and Budd are not entitled to recover punitive damages. EEOC and Budd oppose the motion, contending that SkyWest did not preserve this ground in its prior motions, and that, regardless, the proof is legally sufficient to support the award of punitive damages.

B

A party moving for judgment as a matter of law must do so in a Rule 50(a) motion

---

[2]On December 18, 2024 EEOC moved for injunctive relief. On December 20, 2024 EEOC requested leave to file an amended motion for injunctive relief. SkyWest did not oppose that request. Because the court is granting EEOC leave to file an amended motion for injunctive relief, it denies EEOC's original motion for injunctive relief without prejudice as moot. The court will consider EEOC's amended motion for injunctive relief that was attached to EEOC's request for leave to amend.

- 3 -

"made at any time before the case is submitted to the jury," and, if the court does not grant the motion, in a "renewed motion" under Rule 50(b). *Holmes v. Reddoch*, 117 F.4th 309, 318 (5th Cir. 2024). A "post-verdict motion for judgment as a matter of law 'cannot assert a ground that was not included in the motion for judgment as a matter of law made at the close of the evidence.'" *EEOC v. Serv. Temps*, 2010 WL 5108733, at *7 (N.D. Tex. Dec. 9, 2010) (Fitzwater, C.J.) (quoting *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998), *aff'd* 679 F.3d 323 (5th Cir. 2012).

A ground is preserved for purposes of a post-verdict motion for judgment as a matter of law if it was stated with sufficient specificity to give proper notice to the nonmovant and the court. *See McCann v. Tex. City Ref., Inc.*, 984 F.2d 667, 672 (5th Cir. 1993) (per curiam); *compare, e.g.*, *DeCorte v. Jordan*, 497 F.3d 433, 438 (5th Cir. 2007) (cleaned up) (cautioning that "Rule 50(a) motions should be far more specific" than defendant's sufficiency-of-the-evidence motion stating "all they have as far as evidence of discrimination are the numbers based upon what they saw in the . . . room when they received their papers and their subjective active belief that it was discrimination that motivated those decisions") *with Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 Fed. Appx. 440, 445 (5th Cir. 2014) (per curiam) (concluding that defendant's Rule 50(a) motion was sufficiently specific to preserve unjust enrichment issue where defendant "did not specifically mention the word 'unjust enrichment' in its Rule 50(a) motions," but "by challenging the sufficiency of the evidence of all of [plaintiff's] claims, [plaintiff] and the court were on notice that [defendant] believed [plaintiff's] unjust enrichment claim lacked proof"). Proper notice is best

- 4 -

understood by reference to the "two essential purposes" that animate Rule 50(b):

> to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit.

*Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir. 1983).

The court concludes that SkyWest preserved the ground on which it now relies in its renewed motion for judgment as a matter of law because its prior motions stated this ground with sufficient specificity to give proper notice to EEOC, Budd, and the court. After EEOC and Budd rested their cases, SkyWest argued in support of its Rule 50(a) motion that "the allegations in this lawsuit do not rise to the level of punitive damages being appropriate because of the prompt remedial measures that were taken by the company and all the ways that the company worked with her to put her on a paid leave, et cetera." D. App. (ECF No. 166-1) at 97. SkyWest stated this argument with sufficient specificity to preserve the ground that there was insufficient evidence of malice or reckless indifference. *See 50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 256 n.12 (5th Cir. 1999) (concluding that defendant's "objection to the jury charge . . . in which [it] argued that the evidence was insufficient to submit the question of punitive damages to the jury was sufficient to preserve the error . . . under [Rule 50]"). And at the close of evidence, SkyWest argued in support of its second Rule 50(a) motion that "[t]here is no evidence on the record that would warrant a punitive damage instruction. . . . [When the conduct was reported], immediately an

investigation took place . . . . So I would move that there is a complete inadequate evidence to which a punitive damage instruction would be appropriate." D. App. (ECF No. 166-1) at 131. This argument was stated with sufficient specificity to preserve Skywest's good-faith defense to punitive damages. *Compare, e.g.*, *DeCorte*, 497 F.3d at 438 *with Ferrara Fire Apparatus, Inc.*, 581 Fed. Appx. at 445.

C

The court now considers the merits of SkyWest's motion, which turns on whether the evidence was legally sufficient for a reasonable jury to award punitive damages.

1

"A motion for judgment as a matter of law 'challenges the legal sufficiency of the evidence to support the verdict.'" *Jacobs v. Tapscott*, 516 F.Supp.2d 639, 643 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). "Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue." *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (internal quotation marks omitted). The facts and inferences must point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. *Id.* The court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Id.* The court cannot make credibility determinations or weigh the evidence. *Id.* In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury

is not required to believe. *Id.* This means that "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004).

2

To recover punitive damages, EEOC and Budd were obligated to establish that SkyWest acted with malice or reckless indifference to Budd's federally protected rights. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999); *see also* 42 U.S.C. § 1981a(b)(1) (requiring showing that defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual"). The punitive damages standard focuses on the discriminating party's state of mind. *Kolstad*, 527 U.S. at 534-35. Thus "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* at 536.

For punitive damages to be awarded against an employer based on the act of an employee, the employee must have been employed in a managerial capacity and have acted in the scope of his or her employment. *See id.* at 542-43 (citing Restatement (Second) of Torts § 909 and Restatement (Second) of Agency § 217(c)). An employer can avoid liability for an employee's discriminatory acts, however, where the employer "has undertaken [] good

faith efforts at Title VII compliance." *Id.* at 544.

3

The parties first disagree about whether a reasonable jury could have found that SkyWest's managerial employee—Dehais, Widmer, or Hansen—acted with malice or reckless indifference to Budd's federally protected right to be free from working in a hostile environment.

> Ultimately, the terms "malice" and "reckless indifference" "focus on the actor's state of mind." Both "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Thus, the defendant employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable for punitive damages."

*EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 467-68 (5th Cir. 2013) (citations omitted). When, as here, the employer is alleged to be vicariously liable for its managerial employees' discriminatory acts, knowledge may be inferred from the employee's having been trained on the employer's policy against such discrimination. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 440 (5th Cir. 2022).

SkyWest contends that "the evidence was insufficient to establish that any-one with a managerial capacity acted with malice or reckless indifference to Budd's rights under Title VII[.]" D. Br. (ECF No. 165) at 5. SkyWest maintains that there was insufficient evidence that Hansen[3] acted with malice or reckless indifference because, although EEOC and Budd

---

[3]The court limits its analysis to whether a reasonable jury could have found that Hansen acted with malice or reckless indifference to Budd's federally protected right to be

offered evidence that he made inappropriate comments to Budd, "EEOC offered no evidence of Hansen's state of mind . . . .   In fact, Hansen . . . told Dehais that on hearing Budd's allegations, he was working on ideas to improve the environment and morale."  *Id.* at 8.

EEOC and Budd respond that they "presented sufficient evidence of [SkyWest's] malice or reckless indifference during trial."  Ps. Resp. (ECF No. 178) at 5.  They maintain that "[b]oth Budd's and Dehais's testimony supports inferring Hansen's malicious intent from his persistent and humiliating harassing conduct."  *Id.* at 7.  And they posit that, "[a]s a manager, Hansen received training on sexual harassment both when he was hired and annually thereafter.  This training shows he was aware of his workplace obligations and either acted with malice in violating Budd's rights or . . . knew there was a substantial risk he was doing so."  *Id.*

SkyWest replies that

> EEOC fails to cite any evidence Hansen actually received both the sexual harassment training upon hire or annually.  EEOC cites general testimony by Dehais on how often computer based sexual harassment training is provided to SkyWest's employees including managers, but nothing specific to Hansen.  EEOC thus failed to show Hansen had sufficient knowledge of SkyWest's policies to act with malice and reckless indifference.

D. Reply (ECF No. 181) at 4 (citation omitted).

---

free from working in a hostile environment.  The court need not decide whether a reasonable jury could have made the same finding as to Dehais or Hansen because, under the court's instructions to the jury, the jury could reasonably have awarded punitive damages based on legally sufficient evidence that Dehais, Widmer, or Hansen acted with the requisite malice or reckless indifference, and the evidence is legally sufficient to make this finding at least as to Hansen.

Viewing the evidence in the light most favorable to the verdict, and drawing all reasonable inferences in favor of EEOC and Budd, the court concludes that there is legally sufficient evidence for a reasonable jury to have found that Hansen acted with malice or reckless indifference to Budd's federally protected right to be free from working in a hostile environment. SkyWest does not appear to dispute that there is sufficient evidence that Hansen violated that right by subjecting Budd to inappropriate comments and gestures.[4] And there was legally sufficient evidence for a reasonable jury to have found that Hansen—and, vicariously, SkyWest—perceived the risk that Hansen's conduct violated Budd's federally protected rights. Dehais testified that every SkyWest employee receives computer-based training on SkyWest's sexual harassment policy "[u]pon hire . . , when their job code changes to a leadership position, . . . and then annually every year after." Ps. App. (ECF No 179-1) at 52. And SkyWest's policy makes clear that discrimination based on a protected characteristic violates federal law. From this evidence, a reasonable jury could have inferred that Hansen, a SkyWest managerial employee, was aware that discriminating against Budd based on her sex violated federal law, and therefore that he acted with malice or reckless indifference to her federally protected rights.

4

The parties next dispute whether a reasonable jury could have found that SkyWest did not make a good-faith effort to comply with Title VII.

---

[4]Budd testified at length about Hansen's harassing conduct, and the jury as trier of fact was entitled to accept her testimony as credible. *See Wantou*, 23 F.4th at 437.

"[E]ven if [its managerial employees] acted with malice or reckless indifference, [SkyWest] may avoid vicarious punitive damages liability if it can show that the [employees'] actions were contrary to [SkyWest's] good-faith efforts to comply with Title VII." *Wantou*, 23 F.4th at 439 (internal quotation marks omitted). SkyWest appears to base its good-faith defense on Dehais's investigation pursuant to its sexual harassment policy. An employer may make a good-faith effort to comply with Title VII by investigating its employee's sexual harassment complaints pursuant to its sexual harassment policy. *See Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 477 (5th Cir. 2002) (holding that district court did not err in failing to instruct jury on punitive damages based on good-faith defense where employer "had a well-publicized policy forbidding sexual harassment, gave training on sexual harassment to new employees, established a grievance procedure for sexual harassment complaints, and initiated an investigation of the plaintiffs' complaints"). A jury may reasonably find that an employer's investigation is not a good-faith effort, however, when there is evidence that the investigation did not respond to the employee's complaint effectively. *See Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 302 (5th Cir. 2024) (explaining that defendant was entitled to judgment as a matter of law on punitive damages based on good-faith defense where it conducted an in-depth investigation of plaintiff's complaints, "unlike other cases where this court has found companies vicariously liable for punitive damages because they ignored the plaintiff's complaints"), *cert. denied*, ___ S.Ct. ___, 2024 WL 4426667 (U.S. Oct. 7, 2024); *Wantou*, 23 F.4th at 440 (explaining that defendant was not entitled to judgment as a matter of law on punitive damages based on

- 11 -

good-faith defense where plaintiff "presented evidence from which the jury could conclude that at least certain of his ethics complaints were ignored by Wal-Mart"); *Rhines v. Salinas Constr. Techs., Ltd.*, 574 Fed. Appx. 362, 368-69 (5th Cir. 2014) (per curiam) (same where "jury heard and saw evidence that [defendant] did not act in good faith and provided false information and affidavits to the EEOC about [plaintiff's] complaints" and defendant "maintained at trial that it had conducted an investigation into [plaintiff's] complaints, but the person who allegedly performed the investigation testified before the jury that he did not investigate"); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999) (emphasis omitted) (same where defendant's "only evidence . . . was that it [] encourages employees to contact higher management with grievances" and defendant "presented no evidence either of its response to [plaintiff's] complaint, or of any specific Title VII efforts").

SkyWest contends that Dehais's investigation of Budd's complaints evidences SkyWest's "good-faith efforts to comply with Title VII." D. Br. (ECF No. 165) at 11. According to SkyWest, "[t]he evidence established that when Budd filed an internal complaint, Kellie Dehais conducted an in-depth investigation in accordance with [SkyWest's sexual harassment policy]," *id.*; and "Dehais interviewed multiple witnesses, examined relevant evidence, provided a detailed analysis of Budd's allegations, and took corrective action against the responsible employees," *id.*

EEOC and Budd respond that Dehais's investigation did not take Budd's complaints seriously; that "Dehais strayed outside of her normal investigative practices, resulting in a

- 12 -

cursory investigation," Ps. Resp. (ECF No. 178) at 11; and that "[t]he disciplinary action and corrective training Defendant purported to take in response to Budd's complaints were either equated to a slap on the wrist, never occurred, or occurred years after Budd's employment ended," *id.*

Viewing the evidence in the light most favorable to the verdict, and drawing all reasonable inferences in favor of EEOC and Budd, the court concludes that a reasonable jury could find that SkyWest did not make a good-faith effort to comply with Title VII.  EEOC and Budd presented evidence that Dehais did not interview many of the employees implicated by Budd's allegations; did not subject those employees whom she did interview to fulsome questioning; did not follow her standard practice of writing an investigative summary at the investigation's conclusion; and subjected the employees whom she found to have violated SkyWest's sexual harassment policy to lenient corrective action, or, in one case, no corrective action at all.  From this evidence, a reasonable jury could have reasonably inferred that SkyWest's investigation of Budd's complaints was too ineffective to constitute a good-faith effort at complying with Title VII.

Accordingly, the court denies SkyWest's renewed motion for judgment as a matter of law.

### III

The court considers next SkyWest's motion for a new trial.

### A

The court "has discretion to grant a new trial under Rule 59(a) of the Federal Rules

of Civil Procedure when it is necessary to do so 'to prevent an injustice.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 1867292, at *9 (N.D. Tex. Aug. 5, 2005) (Fitzwater, J.) (quoting *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995)), *aff'd*, 480 F.3d 377 (5th Cir. 2007). A new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Rule 59(a)(1)(A). Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). For example, a new trial may be granted if the court concludes that the verdict is against the weight of the evidence, that the trial was unfair, or that prejudicial error was committed in the course of the trial. *See id.* at 613.

B

SkyWest bases its motion for a new trial on two alleged prejudicial errors.

First, SkyWest contends that the court should grant a new trial on all issues because SkyWest was prejudiced when the court admitted over a hearsay objection four EEOC exhibits that consisted of text messages among Budd and her husband, sister-in-law, and various friends concerning her experience working at SkyWest. SkyWest maintains that, although these exhibits were not admitted for the truth of the matter asserted, they "were in fact offered for the truth of the matters asserted therein, as EEOC's closing argument made clear, and were therefore inadmissible hearsay under Rule 802." D. Br. (ECF No. 165) at 13. SkyWest maintains that it was prejudiced because the exhibits "unfairly bolstered Budd's

- 14 -

testimony on disputed facts" and "adversely influenced the jury's verdict." *Id.*

Second, SkyWest contends in the alternative that the court should grant a new trial on compensatory damages because SkyWest was prejudiced when the court rejected its requested instruction on mitigation of damages. SkyWest posits that it was entitled to the instruction because it was "a correct statement of the law" and was "supported by the evidence." *Id.* at 14. SkyWest maintains that it was prejudiced when the jury awarded compensatory damages without considering Budd's failure to mitigate her emotional harm.

EEOC and Budd respond that neither alleged error warrants a new trial. They maintain that the admission of the disputed exhibits was not prejudicial error; that the exhibits were properly admitted for a non-truth purpose, and, regardless, were admissible under the hearsay exceptions for Budd's state of mind and present-sense impressions; that SkyWest has not demonstrated that it suffered any prejudice that was not cured by the court's limiting instruction to the jury not to consider the exhibits for the truth of the matters asserted; that the court's refusal to instruct the jury on mitigation of damages was not prejudicial error; and that SkyWest's requested instruction was incorrect as a matter of law because Title VII does not require claimants to mitigate compensatory damages.

C

The court concludes that the admission of the disputed exhibits was not prejudicial error warranting a new trial. The court properly overruled SkyWest's hearsay objection because EEOC and Budd did not offer the exhibits for the truth of the matters asserted. *See* Fed. R. Evid. 801(c). EEOC's closing argument confirms its non-truth purpose. EEOC

- 15 -

urged the jury to consider Budd's text messages as circumstantial evidence that she had experienced sexual harassment at SkyWest, not for the truth of the matters asserted. For example, Budd's text message to her husband stating that "[the shipment] is out near Dallas[,] apparently where [the coworkers with whom I will be traveling are] going to 'sell me' for prostitution," D. App. (ECF No. 166-1) at 178, was offered as circumstantial evidence that Budd's coworkers had made such comments, not as evidence that those coworkers actually intended to sell Budd for prostitution at the location of the shipment. This is plainly a permissible non-hearsay purpose. *See United States v. Parry*, 649 F.2d 292, 295 (5th Cir. June 1981) (using out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule).

D

Nor was the court's refusal to give SkyWest's requested jury instruction on mitigation of damages prejudicial error warranting a new trial.

"It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth." *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 424-25 (5th Cir. 1985). A defendant is "entitled to have the jury instructed on the law that supports defensive theories that are raised by the evidence." *Id.* at 425. When, as here, "an objection is made to the failure to give a requested instruction, the correctness of the proposed instruction must . . . be shown as a threshold

matter." *Id.*

SkyWest contends that, although Title VII's compensatory damages provision does not expressly impose a duty to mitigate, Title VII claimants have a duty to mitigate their compensatory damages because there is no textual basis for displacing the presumption that Congress did not legislate Title VII in derogation of the common-law doctrine requiring plaintiffs to mitigate compensatory damages. *See United States v. Texas*, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.").

To determine that SkyWest's proposed mitigation instruction is incorrect as a matter of law, the court need not decide whether Title VII claimants always have a duty to mitigate compensatory damages.[5] This is so because, even if Title VII imposes some duty to mitigate compensatory damages, it does not impose a duty to mitigate emotional harm.

SkyWest requested that the jury be instructed on mitigation of damages on the basis that Budd did not mitigate her emotional harm. Yet, SkyWest's reading of Title VII does not support the inference that Title VII claimants have a duty to mitigate their *emotional harm*. This is so because the canon of construction that SkyWest relies upon does not apply when

---

[5]Whether Title VII claimants have a duty to mitigate compensatory damages is an open question. Some courts have read Title VII's expression of the duty to mitigate in other provisions, *see, e.g.*, 42 U.S.C. § 2000e-5(g)(1) (requiring claimants to mitigate back pay losses), to imply the exclusion of a duty to mitigate compensatory damages. *See, e.g., EEOC v. Fred Meyer Stores*, 954 F.Supp.2d 1104, 1128 (D. Or. 2013). At least one court, however, reads Title VII not to abrogate the common-law duty to mitigate compensatory damages. *See EEOC v. SDI of Mineola, Tex., LLC*, 631 F.Supp.3d 418 (E.D. Tex. 2022).

the relevant common law is not "well-established," *see Pasquantino v. United States*, 544 U.S. 349, 359, 360-61 (2005), which the supposed common-law duty to mitigate emotional harms plainly is not. *See Zurba v. United States*, 318 F.3d 736, 746 (7th Cir. 2003) (Posner, J., dissenting) (explaining that few courts have imposed duty to mitigate emotional injuries); Eugene Kontorovich, *The Mitigation of Emotional Distress Damages*, 68 U. Chi. L. Rev. 491, 500 (2001) ("Despite the ubiquitous use of mitigation in determining damages, courts have neglected to apply the rule to emotional distress.") (collecting cases). SkyWest's proposed instruction therefore was not correct as a matter of law because it assumed that Budd had a duty to mitigate her emotional harm. The court's refusal to give the requested instruction was not error.

Accordingly, SkyWest's motion for a new trial is denied.

## IV

The court now turns to EEOC's amended motion for injunctive relief.[6]

## A

The court can enjoin a defendant from engaging in unlawful employment practices or order such affirmative action as is appropriate if the court finds that the defendant has intentionally engaged in an unlawful employment practice. *See* 42 U.S.C. § 2000e-5(g)(1). Although "[i]ssuance of an injunction rests primarily in the informed discretion of the district court," *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977); *see also*

---

[6]To the extent necessary, the court treats EEOC's motion as a Rule 59(e) motion to alter or amend the judgment, which does not include injunctive relief.

*EEOC v. Café Acapulco, Inc.*, No. 3:98-CV-2302-P, slip op. at *1 (N.D. Tex. June 7, 2000) (Solis, J.), "[a]bsent clear and convincing proof of no reasonable probability of further noncompliance with the law, a grant of injunctive relief is mandatory," *EEOC v. Fenyves & Nerenberg, M.D.P.A.*, 1999 WL 134279, at *7 (Mar. 9, 1999) (Fitzwater, J.) (citing *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977)). "If the court finds that the defendant intentionally discriminated in the past, the court has 'broad discretion to craft an injunction that will ensure the employer's compliance with the law.'" *Serv. Temps*, 2010 WL 5108733, at *4. "Thus EEOC can obtain an injunction 'even where the EEOC only identifies one or a mere handful of aggrieved employees.'" *Id.* "And EEOC need not allege that the defendant engaged in a pattern or practice of discrimination." *Id.*

B

The parties do not dispute the jury's finding that SkyWest intentionally engaged in an unlawful employment practice. They disagree, however, about whether an injunction should be deemed mandatory in this case on the ground that SkyWest has not established by clear and convincing evidence that there is no reasonable probability that it will violate Title VII in the future, and, if so, whether the requested injunction is of the appropriate scope.

EEOC contends that an injunction is mandatory because "SkyWest is unable to marshal clear and convincing proof of no reasonable probability of future compliance with Title VII[.]" P. Mot. (ECF No. 168-1) at 5. EEOC maintains that the sexually hostile work environment that Budd experienced is likely to persist because SkyWest continues to employ the personnel and policies that were responsible for the creation of, or failure to promptly

remedy, that environment; that the requested injunction is properly tailored to the "failure of SkyWest's reporting and investigative processes," *id.* at 6, because the "violation found by the jury is a pervasive one, not limited to one or two bad actors, but rather an entrenched culture problem that SkyWest has not acknowledged or taken any steps to correct," *id.* at 7; and that the remedy "needs to be of a duration that allows for a long-term solution and repeated training and oversight," *id.* at 7-8.

SkyWest responds that an injunction is not mandatory or advisable because "the record demonstrates the absence of any credible evidence which would support a contention that [its Title VII] violation is likely to recur," D. Resp. (ECF No. 176) at 2; that "not all of the individuals stated in the EEOC[] Motion are still employed with SkyWest," *id.* at 1; that "EEOC has provided no actual evidence Ms. Dehais did not perform an adequate investigation into Ms. Budd's complaint of sexual harassment," *id.* at 3; that the requested injunction is excessively broad in scope; that reporting requirements should be limited to the maintenance department because "the allegations in this case were specific as to the maintenance department," *id.* at 5; and that the requested time period of five years is disproportionate when, as here, a single employee's complaint was investigated pursuant to established policies.

In reply, EEOC "agrees reporting requirements should be limited to Defendant's Parts and Maintenance department," P. Reply (ECF No. 180) at 5, but it maintains that SkyWest's existing protections against the recurrence of Title VII violations are inadequate, and that a five-year injunction is the necessary remedy.

C

The court concludes that SkyWest has not met its burden to establish by clear and convincing evidence that there is no reasonable probability that it will violate Title VII in the future. The jury necessarily found that SkyWest violated Title VII by failing to take prompt remedial action with respect to Budd's complaints of a hostile work environment. This finding is based, at least in part, on evidence that SkyWest's system for learning of, and remedying, such complaints was deficient. SkyWest's policy mandated that employees, including managers, report sexual harassment, or else they would receive corrective action up to and including termination. EEOC and Budd presented evidence that, the policy notwithstanding, upper management did not promptly learn of Budd's allegations, although employees and managers participated in, witnessed, or otherwise learned of the alleged harassing conduct against Budd. EEOC and Budd also introduced evidence that, when upper management did learn of Budd's allegations and the failures in its reporting system, SkyWest responded with an investigation that was less than comprehensive and that resulted in relatively lenient remedial measures. SkyWest now represents to the court that the same policy, administered by many of the same personnel, establishes that SkyWest's Title VII violations likely will not recur in the future. The court is not persuaded by clear and convincing evidence. *See Serv. Temps*, 2010 WL 5108733, at *5 (granting injunctive relief where defendant did not establish by clear and convincing evidence that there was no reasonable probability that plan to prevent future violations would not result in such violations).

The court will therefore grant the following injunctive relief by an amended judgment. It will enjoin SkyWest from subjecting any parts or maintenance department employees to a hostile work environment on the basis of sex; it will direct that SkyWest create and distribute a protocol for effectively responding to discrimination and harassment; it will order that SkyWest conduct one-hour of annual training for all employees in SkyWest's Dallas-Fort Worth location; it will order that SkyWest conduct two-hours of annual training for the Employee Relations Manager assigned to SkyWest's Parts and Maintenance Department; it will direct Skywest to post a notice explaining the protections of Title VII in the DFW Parts and Maintenance Department and provide each employee a copy; and it will order that SkyWest notify EEOC within 30 days of receipt of any complaint of sexual harassment within the DFW Parts and Maintenance Department.

The court will order that these measures remain in place for a period of three years because the court determines in its discretion that imposing these measures for a period of three years, as opposed to the requested period of five years, is sufficient but not greater than necessary to ensure SkyWest's compliance with Title VII. *See Boh Bros. Constr. Co.*, 731 F.3d at 470 ("We review the scope of the injunction for abuse of discretion."); *see also EEOC v. Danny's Rest., LLC*, 2021 WL 3622139, at *3 (S.D. Miss. Aug. 16, 2021) (granting five-year injunction because of defendant's recurrent Title VII violations).

\* \* \*

For the reasons explained, the court denies SkyWest's December 18, 2024 motion for judgment as a matter of law on punitive damages and for a new trial on compensatory

damages; denies as moot EEOC's December 18, 2024 motion for injunctive relief; grants

EEOC's December 20, 2024 motion to amend its motion for injunctive relief; and grants in

part and denies in part EEOC's December 20, 2024 amended motion for injunctive relief.

The court will enter an amended judgment in accordance with today's memorandum opinion

and order.

        **SO ORDERED**.

    March 4, 2025.

                                    _____
                                    SIDNEY A. FITZWATER
                                    SENIOR JUDGE

- 23 -