IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EQUAL EMPLOYMENT                §
OPPORTUNITY COMMISSION,         §
                               §
            Plaintiff,         §
                               §
and                            §        Civil Action No. 3:22-CV-1807-D
                               §
SARAH BUDD,                    §
                               §
            Intervenor-Plaintiff, §
                               §
VS.                            §
                               §
SKYWEST AIRLINES, INC.,        §
                               §
            Defendant.         §

MEMORANDUM OPINION
AND ORDER

In this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e *et seq.*, in which the jury found that intervenor-plaintiff Sarah Budd ("Budd") had

been subjected to a sexually hostile work environment, Budd applies pursuant to Fed. R. Civ.

P. 54 for an award of attorney's fees, out-of-pocket expenses, and costs under 42 U.S.C. §§

1988(b) and 2000e-5(k), and plaintiff Equal Employment Opportunity Commission

("EEOC") seeks to recover, under the judgment, its taxable costs of court.  Defendant

SkyWest Airlines, Inc. ("SkyWest") opposes Budd's fee application and objects to EEOC's

bill of costs.  For the reasons that follow, the court awards Budd attorney's fees in the sum

of $220,132.00, and expenses and taxable costs of court in the sum of $5,111.99, and it

sustains in part and overrules in part SkyWest's objections to EEOC's bill of costs and

awards taxable costs to EEOC in the sum of $24,607.47.

I

The court entered judgment on the jury verdict and awarded EEOC and Budd, jointly, the sum of $170,000 in compensatory damages and $130,000 in punitive damages. The court also awarded post-judgment interest and taxable costs of court. In an amended judgment filed today, the court also grants injunctive relief in EEOC's favor.

Budd seeks an award of attorney's fees and costs totaling $230,701.99, which consists of $225,590.00 in attorney's fees and $5,111.99 in costs. She requests attorney's fees for work performed by two attorneys: Edith Thomas, Esquire ("Thomas") and Michael Amster, Esquire ("Amster"), and two paralegals. Thomas is Budd's lead counsel in this case. She practices law with the firm of Zipin, Amster, & Greenberg, LLC ("ZAG"). Amster is a partner at ZAG. Budd requests compensation for Thomas' services for 406.8 hours at the hourly rate of $550.00, totaling $223,740.00. For Amster's work, Budd requests compensation for 2.3 hours at the hourly rate of $550.00, totaling $1,265.00. And Budd requests compensation for paralegal services for 6.5 hours at the hourly rate of $90, totaling $585.00. To support the fee application, Budd has submitted several declarations and three sets of billing records. Budd also seeks costs in the sum of $5,111.99.

SkyWest opposes Budd's fee application on several grounds and asserts that the court should reject the request in its entirety, or, alternatively, should award the substantially reduced sum of $154,570.33.

Also pending is SkyWest's objection to EEOC's bill of costs. The judgment (and

- 2 -

amended judgment) award EEOC its taxable costs of court against SkyWest, and the clerk

of court taxed the sum of $29,567.97 to EEOC as costs.  SkyWest objects to the amount of

taxed costs, contending that they should be denied or significantly reduced.

The court is deciding the motions on the briefs, without oral argument.

II

The court turns first to Budd's application for attorney's fees.[1]  Budd is entitled under

the judgment to recover from SkyWest actual and punitive damages totaling $300,000.00,

together with post-judgment interest at the rate of 4.35% per annum, on her hostile work

environment claim under Title VII.  When a plaintiff prevails on a Title VII claim, "the court,

in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of

the costs[.]"  42 U.S.C. § 2000e-5(k).

> The determination of a fees award is a two-step process.  First
> the court calculates the "lodestar" which is equal to the number
> of hours reasonably expended multiplied by the prevailing
> hourly rate in the community for similar work.  The court should
> exclude all time that is excessive, duplicative, or inadequately
> documented.  Once the lodestar amount is calculated, the court
> can adjust it based on the twelve factors set forth in *Johnson v.
> Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.
> 1974).

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted).

There is a strong presumption that the lodestar is adequate to induce attorneys to undertake

---

[1]The parties do not dispute that, as a prevailing intervenor in a case prosecuted by
EEOC, Budd can recover her attorney's fees.  *See EEOC v. Clear Lake Dodge*, 60 F.3d 1146,
1154 (5th Cir. 1995) (per curiam) (acknowledging that Title VII intervenor may recover
attorney's fees).

representation in meritorious civil rights cases. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010). The applicant bears the burden of substantiating both the requested hours and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

III

To determine the lodestar, the court first considers whether the requested hourly rates are reasonable.

A

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). As the fee applicant, Budd "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n. 11). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Budd seeks to recover fees at the hourly rate of $550.00 for each attorney and $90 per hour for two paralegals. She maintains that the attorney's fees are reasonable considering the local market and each attorney's experience. In support, she adduces the 2023 Texas Employment Lawyers Association Attorneys' Fees Hourly Rates Yearbook for Labor and Employment Law, and affidavits from Amster, Thomas, and several experienced

practitioners familiar with the legal market and the relevant attorneys, each opining that the requested rates are reasonable in the Northern District of Texas. She maintains that the paralegal's fees are reasonable when compared to "rates awarded for paralegal work in other cases by this court." P. Mot. (ECF No. 161) at 12 n.1. SkyWest does not appear to contest the reasonableness of the hourly rates of Amster, Thomas, and the two paralegals.

### B

Applying its expertise in determining reasonable attorney's fees, the court finds on the basis of Amster's and Thomas' levels of experience and the nature of this litigation that their requested hourly rate of $550 is reasonable. The court also finds, based on fees awarded in comparable cases, that the requested hourly rate of $90 for the two paralegals is reasonable. *See, e.g.*, *Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F.Supp.3d 395, 411 (N.D. Tex. 2021) (Fitzwater, J.).

### IV

The court next determines the number of hours reasonably expended by Budd's counsel.

### A

The court turns first to SkyWest's contention that time spent on certain specific tasks should be reduced as excessive.

### 1

"The district court must eliminate excessive . . . time." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).

The reasonable time for a task is measured according to the time it would have taken Budd's counsel to exercise their professional judgment in completing that task. *See Merrick v. Scott*, 2011 WL 1938188, at *6 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.).

2

SkyWest challenges Budd's counsel's spending "a total of 6.7 hours" over three days "drafting the Intervenor Plaintiff's Complaint and Motion to Intervene." D. Resp. (ECF No. 174) at 6. Budd responds that the time "included substantive research and drafting. Completing it over multiple days does not mean it was excessive." P. Reply (ECF No. 175) at 7.

The court finds that 6.7 hours to draft Budd's motion to intervene and her plaintiff-intervenor's complaint is excessive. The unopposed motion to intervene is a two-page pleading that consists of 11 factual and procedural averments. The plaintiff-intervenor's complaint is a 7-page pleading that appears mostly to paraphrase EEOC's original complaint. Even assuming *arguendo* that Budd's counsel—attorneys who regularly bring these types of actions—did not use template pleadings, exercising their professional judgment in completing these two pleadings would at most have required researching the procedural requirements for intervention, reviewing EEOC's original complaint for factual or legal errors, and refining its averments to reflect Budd's intervenor status and any facts that EEOC might have omitted or stated incorrectly.

The court finds that 4.5 hours is adequate to account for such legal work in this case.

- 6 -

3

SkyWest next challenges Budd's counsel's spending "a total of 7 hours" over 4 days "reviewing Intervenor Plaintiff's answers to SkyWest's interrogatories and drafting same." D. Resp. (ECF No. 174) at 6. Budd responds that the "time was reasonable given the case complexity." P. Reply (ECF No. 175) at 7.

Budd has not met her burden to demonstrate that 7 hours were reasonably expended reviewing and answering SkyWest's interrogatories. Neither party has provided any detail about the contents of SkyWest's interrogatories, which leaves the court to compare the time claimed to the time it would have taken for an attorney to exercise her professional judgment in reviewing and responding to the average set of interrogatories. The court finds that 7 hours—almost an entire work day—are excessive, and that 5 hours were reasonably required to complete the services related to SkyWest's interrogatories.

4

SkyWest also challenges Budd's counsel's spending "a total of 3.2 hours . . . researching case law and issues related to service of a subpoena duces tecum." D. Resp. (ECF No. 174) at 6. Budd responds that "[t]his research addressed unique legal issues concerning a subpoena duces tecum to a party rather than a non-party and is therefore reasonable." P. Reply (ECF No. 175) at 7.

The court finds that expending 3.2 hours to research whether a litigant may issue a subpoena duces tecum to a party to the litigation is excessive. Attorneys with the experience of Budd's counsel should be able to research such a narrow question, while still exercising

their professional judgment, in fewer than 3.2 hours.  The court finds that expenditure of 2.5 hours is adequate.

5

SkyWest challenges Budd's counsel's spending 25.3 hours "reviewing, drafting, and editing the fee petition . . . .  These entries do not even include research on past fee decisions in Northern District of Texas (separate billing entry), obtaining declarations from counsel . . . as evidence . . , or reviewing Intervenor Plaintiff's billing entries for evidence[.]" D. Resp. (ECF No. 174) at 6.  Budd responds that the "petition was 25 pages with an appendix of 379 pages—a substantial, detailed submission."  P. Reply (ECF No. 175) at 7.

The court finds that spending 25.3 hours preparing the fee petition is not excessive. *See Lewallen v. City of Beaumont*, 2009 WL 2175637, at *9 (E.D. Tex. July 20, 2009) (reducing time to 61.75 hours), *aff'd*, 394 Fed. Appx. 38 (5th Cir. 2010); *Prater v. Com. Equities Mgmt. Co.*, 2008 WL 5140045, at *7 (S.D. Tex. Dec. 8, 2008) (reducing time to 30 hours).  SkyWest's contention that the pertinent time entries "do not even include research on past fee decisions in Northern District of Texas (separate billing entry), obtaining declarations from counsel in Northern District of Texas as evidence for fee petition, or reviewing Intervenor Plaintiff's billing entries for evidence of fee petition," D. Resp. (ECF No. 174) at 6, is not persuasive.  Even including those entries, Budd's counsel is seeking compensation for 28.5 hours.  The court finds that the expenditure of 25.3 hours is reasonable.

B

The court considers next whether to reduce the time claimed for "purely clerical" tasks.

"[C]ourts in this Circuit have held that counsel should not be awarded attorney's fees for clerical work that could easily be performed by support staff." *Harris v. Colvin*, 2013 WL 2896880, at *5 (N.D. Tex. June 13, 2013) (Ramirez, J.) (citing cases), *rec. adopted*, 2013 WL 2896880 (N.D. Tex. June 13, 2013) (Lynn, J.). Moreover, "[p]aralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

SkyWest maintains that Budd has erroneously billed 39 hours of clerical work. In particular, SkyWest identifies 12 entries for clerical tasks totaling 6.8 hours and 32.2 hours in various entries "for conferences with the EEOC" and "case management," which SkyWest contends are so vague that they "likely also include[] non-compensable 'clerical work.'" D. Resp. (ECF No. 174) at 7. In response, Budd agrees to deduct 10.3 hours, which includes 5.8 of the 6.8 hours because "SkyWest failed to identify specific entries beyond a general 1-hour total," P. Reply (ECF No. 175) at 7, and 4.5 of the 32.2 hours because "SkyWest identifies only 1 hour for case management and 3.5 hours for EEOC conferences," *id.* at 8.

The court finds that Budd erroneously seeks compensation for 6.8 hours of clerical work. Budd concedes that 5.8 of those hours were for bates stamping production, combining files for production, and compiling pleadings and deposition transcripts in preparation for trial. The other 1 hour consists of 8 entries, identified by SkyWest as "case management,"

"review[ing] case status and tasks," "review[ing] case deadlines," "review[ing] upcoming deadlines and prioritiz[ing] workflow," and "ensur[ing] compliance with case deadlines." D. Resp. (ECF No. 174) at 7.  The remaining 32.2 hours that SkyWest challenges are more appropriately considered as part of SkyWest's vagueness challenge to certain entries.  *See infra.*  Accordingly, the court excludes 6.8 hours as purely clerical work that is not recoverable as attorney's fees.

C

The court now addresses whether to reduce time claimed for travel.  SkyWest complains that Budd's counsel billed "3.1 hours for her travel to and from [a] deposition," "five hours for her travel to and from the courthouse to her hotel" during trial, and "16.7 hours . . . strictly for travel between Dallas-Fort Worth and where counsel resides in Maryland . . . . without completing any substantive work."  D. Resp. (ECF No. 174) at 8-9. Budd responds, in pertinent part, that she already reduced her travel time by half.

"[T]here is not a consensus regarding the billing of travel time[.]"  *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (per curiam) (discussing 11 U.S.C. § 330). The Fifth Circuit found no abuse of discretion, however, when a trial court reduced travel time by half.  *See, e.g.*, *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993).  Budd voluntarily reduced her travel time by half, and the court is persuaded that no further reduction is warranted.  Accordingly, the court declines to reduce the time claimed for travel.

- 10 -

D

The court next determines whether to reduce the time claimed on the basis that some entries are too vague.

"[T]he fee applicant has the burden to submit adequate documentation of the hours reasonably expended.  Litigants clearly 'take their chances' that the district court will reject or reduce fee awards if they submit vague or incomplete applications."  *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997) (citation omitted).

SkyWest complains that Budd's counsel "reviewed pleadings . . . for a total of 1.6 hours but does not provide the purpose for lengthy review," and "has vague entries" totaling 3.5 hours for conferences with EEOC and Budd that "provide no detail as to what was being conferred."  D. Resp. (ECF No. 174) at 10.  Budd responds that "[a]t most, [the entry for reviewing pleadings] should be discounted by 10%.  As Defendant pointed out, there are 174 docket entries in this case."  P. Reply (ECF No. 175) at 8.  Budd does not appear to dispute SkyWest's contention as to the challenged 3.5 hours.

The court agrees that the entry for reviewing pleadings is vague, but also acknowledges the great number of docket entries in this case.  Budd's proposal of reducing that entry by 10% appears to be reasonable.  The court also finds that the entries for conferring with EEOC identified by SkyWest are too vague to support the hours claimed.  In fact, several other entries, such as those for conferring with EEOC "re discovery," reflect that Budd's counsel could have provided greater detail, but did not.  Accordingly, the court finds that a reduction of 3.66 hours is appropriate.

E

The court turns next to the question of whether to reduce the time claimed on the basis that some entries are duplicative, incorrect, and incomplete.

"The party seeking attorneys' fees must present adequately documented time records to the court.  Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented."  *Watkins*, 7 F.3d at 457.

SkyWest complains that Budd's counsel billed 1.2 hours for a deposition of a third party witness that did not occur, 6.8 hours for items that predate the events at issue in this case, and 29.9 hours for entries that appear to be cut off and illegible.  Budd responds that the "depositions were on two separate days . . . making the claim of duplication incorrect," the entries do not predate the events at issue in this case, but reflect a clerical error, and the illegible entries are corrected by a supplemental attachment.  P. Reply (ECF No. 175) at 8.

The court finds that, in view of Budd's explanations and the supporting documentation, no reduction is warranted.

F

The court assesses last whether to reduce the time claimed based on the failure to exercise proper billing judgment.

Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours.  Plaintiffs submitting fee requests . . . . are charged with proving that they exercised billing judgment."  *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769-70 (5th Cir. 1996).  "The proper remedy when there is no evidence of

- 12 -

billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.* at 770.

SkyWest contends that the court "should reduce Intervenor Plaintiff's claimed hours by at least thirty-three percent (33%) given their failure to exercise billing judgment." D. Resp. (ECF No. 174) at 5. Budd responds that "SkyWest has not identified errors in Plaintiff's fee petition justifying an across-the-board reduction of 33%." P. Reply (ECF No. 175) at 5.

The court finds that Budd has presented evidence that her counsel exercised billing judgment. Budd's counsel avers, and the billing statement reflects, that her counsel "reduced all travel time claimed by 50%" and "reduced entries that [they] believed to be redundant or unecessary." P. App. (ECF No. 162-9) ¶ 20. And although the court has identified some errors in counsels' billing (in total, 15.36 hours), billing judgment does not require perfection.[2]

Accordingly, the court in its discretion declines to reduce the total hours claimed by Budd for failure to exercise proper billing judgment.

---

[2]Billing judgment tests whether the fee applicant has been scrupulous about writing off hours that are "excessive, redundant, or unproductive." *Walker.*, 99 F.3d at 769. It does not test whether the fee applicant claimed time without error. That is why the "proper remedy" for a failure to exercise billing judgment is "not a denial of fees, but a reduction of the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. City of Mesquite, TX*, 313 F.3d 246, 251 (5th Cir. 2002) (internal quotation marks omitted).

G

For the services of Budd's counsel, the court finds that the lodestar fee is based on 400.24 compensable hours at an hourly rate of $550.00, which totals the sum of $220,132.00.

V

The court now considers whether the lodestar fee should be adjusted upward or downward.

A

Once the lodestar amount is determined, there is a strong presumption that it represents a reasonable fee. *See Perdue*, 559 U.S. at 553-54; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The court can adjust the lodestar upward or downward after assessing the properly-considered *Johnson* factors,[3] but the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (per curiam) (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir.1989)). Many of

_____

[3]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney was precluded from other employment by the acceptance of this case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or the circumstances imposed time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. "In applying [the *Johnson* factors], the district court must explain the findings and the reasons upon which the award is based. However, it is not required to address fully each of the 12 factors." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted).

the *Johnson* factors are "presumably fully reflected in the lodestar amount," so "such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings[.]" *Del. Valley Citizens' Council*, 478 U.S. at 565 (citing *Blum*, 465 U.S. at 898-901).

SkyWest maintains that the court should adjust the lodestar fee downward for the time and labor required for the litigation, the novelty and complication of the issues, the skill required to properly litigate the issues, and the amount involved and the results obtained. Budd does not request an upward adjustment, but contests SkyWest's request for a downward adjustment.

B

The court turns first to the time and labor required for the litigation.

> Although hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.

*Johnson*, 488 F.2d at 717 (citation omitted). In particular, when, as here, the plaintiff-intervenor seeks attorney's fees as a prevailing party in a case prosecuted by EEOC, the court must consider to what extent intervenor counsel's participation was "redundant or unnecessary." *See EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir. 1995) (per curiam); *see also EEOC v. Sage Realty Corp.*, 521 F. Supp. 263, 269 (S.D.N.Y. 1981);

- 15 -

*EEOC v. Murphy Motor Freight Lines, Inc.*, 488 F. Supp. 381, 389 (D. Minn. 1980).

SkyWest appears to contend that the lodestar fee does not accurately reflect the time and labor required of Budd's counsel for the litigation. SkyWest maintains that "[t]he case was prosecuted by three trial attorneys from the EEOC"; "[o]f 174 ECF entries on the docket for this case, zero were filed by Intervenor Plaintiff including joint motions with the EEOC"; and "[o]f eighteen depositions Intervenor Plaintiff did not pose one question to any witness." D. Resp. (ECF No. 174) at 4. Budd responds that

> SkyWest mischaracterized Intervenor Counsel's participation. . . . As evidenced by her signature on numerous filings, time entries reflecting work on briefing related tasks, and declarations from EEOC attorneys, counsel for the Intervenor-Plaintiff actively collaborated on the majority of the motions filed by the EEOC. Further, Ms. Thomas's time records demonstrate her preparation for depositions conducted by the EEOC. As outlined in her motion, she conferred with EEOC attorneys during breaks to discuss areas of questioning. SkyWest's response conveniently ignores this coordination and the fact that it was SkyWest—not the Plaintiffs—that conducted most of the depositions in this case.

P. Reply (ECF No. 175 at 2. Budd maintains that her counsel's work "was neither excessive nor duplicative [of EEOC's contributions]." P. Mot. (ECF No. 161) at 5.

SkyWest has not met its burden to establish that a downward adjustment is warranted based on EEOC's prosecution of this case. At best, SkyWest's assertions suggest that EEOC took the lead role in prosecuting this case. But this does not establish that the participation of Budd's counsel was unnecessary or duplicative. To the contrary, Budd details how her counsel collaborated with EEOC, including on the filing of motions and the questioning of

witnesses, in a manner that maximized efficiency and avoided duplication.  Moreover, to the extent that this was a "relatively simple Title VII case" for which "the service of additional attorneys" may call for some justification, *Clear Lake Dodge*, 60 F.3d at 1154, SkyWest still has not met its burden to show how the participation of Budd's counsel was unjustified.  And to the extent that EEOC's principal role may have rendered the participation of Budd's counsel unnecessary or duplicative, the court is satisfied that this circumstance has been adequately accounted for in calculating the lodestar.

C

The court turns next to the novelty and complication of the issues, and the skill required to properly litigate the issues.

> Cases of first impression generally require more time and effort on the attorney's part.  Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law."  Instead, he should be appropriately compensated for accepting the challenge.

*Johnson*, 488 F.2d at 718.

To determine the requisite skill to litigate the case, the "trial judge should closely observe the attorney's work product, his preparation, and general ability before the court.  The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration."  *Id.*

SkyWest contends that "Title VII cases are relatively 'simple' and 'uncomplicated' and therefore do not warrant a particularly high attorney fees award.  Thus, the skill requisite

- 17 -

to perform the services here was not particularly rigorous," especially since Budd's counsel "often brings labor and employment cases." D. Resp. (ECF No. 174) at 11. Budd maintains that this case "involved challenging legal and factual issues, including whether SkyWest had actual or constructive notice of the harassment, the timeliness and adequacy of its remedial actions, and proof of harassment that occurred years before the trial," and "required overcoming nuanced juror biases . . . . compounded by the socially sensitive and evolving cultural context surrounding workplace harassment and the #MeToo movement." P. Mot. (ECF No. 161) at 17.

SkyWest has not met its burden to establish that a downward adjustment is warranted based on the case's level of complexity. The court finds that, although this case was relatively straightforward from a legal standpoint, it was factually challenging because of the nature and degree of the harassment that Budd alleged. And to the extent that the lack of legal complexity might warrant reducing the fee award, this factor is subsumed in the court's lodestar analysis. For example, the court already reduced the time spent researching and drafting pleadings.

D

The court turns last to the amount involved and the results obtained.

"The Supreme Court has twice stated that 'degree of success obtained' is 'the most critical factor' in determining the reasonableness of attorneys' fees." *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 418 (5th Cir. 2022) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "[I]f 'a plaintiff has achieved only partial or limited

- 18 -

success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" *Farrar*, 506 at 114 (quoting *Hensley*, 461 U.S. at 436).

"The amount of damages a plaintiff recovers is . . . one of many factors that a court must consider when calculating an award of attorneys' fees." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) (Fitzwater, J.). While "[t]here is no *per se* requirement of proportionality in an award of attorney fees under 42 U.S.C. § 1988. . . , proportionality is an appropriate consideration in the typical case." *Hernandez v. Hill Country Tel. Co-op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). The court's consideration of proportionality requires that it "give primary consideration to the amount of damages awarded as compared to the amount sought." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (quoting *Farrar*, 506 U.S. at 114) (addressing Title VII claim).

SkyWest contends that Budd achieved only partial or limited success because she "failed to prove [her] retaliation claim," and "[a]s a result of SkyWest's dispositive Motion, the Court precluded Intervenor Plaintiff from the recovery of back wages." D. Resp. (ECF No. 174) at 4. Budd responds that the "results in this case were outstanding." P. Mot. (ECF No. 161) at 20. She maintains that, although the jury did not find for her on her retaliation claim, a "reduction in this case is not warranted because all of the Intervenor-Plaintiff's claims involved a common core of facts." P. Reply (ECF No. 175) at 3. Budd posits that she "could not have recovered more, as the award given to her by the jury exceeded all caps."

- 19 -

*Id.*

SkyWest has not met its burden to establish that a downward adjustment is warranted based on the degree of success obtained.

From a monetary standpoint, Budd obtained excellent results. The jury awarded EEOC and Budd, jointly, the sum of $2,170,000.00 ($170,000 in compensatory damages, and $2 million in punitive damages), which the court reduced under Title VII's damages cap to the total sum of $300,000 ($170,000 in compensatory damages, and $130,000 in punitive damages). The sum of $300,000 is the maximum that Budd could recover at trial for her Title VII claims. *See* 42 U.S.C. § 1981a; *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011) (holding that Title VII damages cap applies per litigant, not per legal theory). And even if the court considers Budd's prayer for backpay, which the court dismissed earlier in the litigation when it granted in part SkyWest's motion for summary judgment, her ultimate recovery of $300,000 is not so disproportionate to her original prayer for relief to justify a downward adjustment of the lodestar fee.[4]

And even assuming *arguendo* that, from a non-monetary standpoint, Budd obtained

---

[4]SkyWest also contends that the lodestar fee should be adjusted downward because it is a large proportion "of any possible recovery of damages in this case" and of what plaintiffs actually recovered. D. Resp. (ECF No. 174) at 4. In support of its contention, SkyWest cites *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542 (7th Cir. 2009), and *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122, at *8 (N.D. Ill. Sept. 16, 2009), neither of which is binding on this court. These decisions suggest that courts should be wary of awarding attorney's fees that are large multiples of the damages actually recovered. But even if these decisions were binding, they are distinguishable because the fee award in this case is less than the actual and punitive damages that Budd is recovering under the judgment.

only partial success because the jury did not find for her on her retaliation claim, a downward adjustment is not warranted. This is so because consideration of the non-monetary results obtained is largely a means to determine the degree of success achieved, which in this case is largely determined by reference to the degree of monetary success achieved. Budd's failure to prevail on her retaliation claim did not detract from her monetary success because, even if she had prevailed on both of her Title VII claims, she would be limited by Title VII's damages cap to a maximum $300,000 recovery. Accordingly, even though Budd did not prevail on her retaliation claim, because she recovered $300,000 for her hostile work environment claim, she obtained "excellent results," for which "h[er] attorney[s] should recover a fully compensatory fee." *Hensley*, 461 U.S. at 437.

In sum, having consulted the *Johnson* factors, the court holds that no downward adjustment of the lodestar fee is warranted, and it awards Budd attorney's fees in the sum of $220,132.00.

## VI

The court turns next to Budd's application for out-of-pocket expenses and court costs. Budd seeks reimbursement in the amount of $5,111.99 for attorney travel. SkyWest does not object.

Although attorney travel expenses are not recoverable under 28 U.S.C. § 1920, *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993), *opinion reinstated in part on reh'g*, 61 F.3d 1113 (5th Cir. 1995), they are recoverable in Title VII cases under 42 U.S.C. § 2000e-5(k). *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir.

2001) (explaining that the Fifth Circuit "has interpreted the 'attorney's fee' allowed by Section 2000e–5(k) to include 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as . . . travel costs").  Budd bears the burden of supporting her request for costs and expenses with evidence documenting the costs incurred.  *See Wright v. Blythe-Nelson*, 2004 WL 2870082, at *9 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.) (citing *Waggoner v. Trans Union, LLC*, 2003 WL 22838718, at *2 (N.D. Tex. Nov. 24, 2003) (Fish, C.J.)).

Having reviewed Budd's claimed expenses and costs and the supporting documentation, the court awards Budd out-of-pocket expenses and court costs in the amount of $5,111.99.

VII

The court now considers SkyWest's objections to EEOC's bill of costs.  The clerk of court taxed EEOC's costs in the amount of $29,567.97.  SkyWest objects to the award, contending that the court should deny all costs requested or substantially reduce the costs awarded.

A

A prevailing party in a civil action is entitled to recover its costs unless the court otherwise directs.  *See* Rule 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing

party.").[5]  This Rule codifies "a venerable presumption that prevailing parties are entitled to costs" and leaves discretion to award costs to the court.  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013).  The court, however, "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so."  *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006).[6]

Moreover, while Rule 54 gives a court the discretion to award or reduce costs, 28 U.S.C. § 1920 limits the type of costs that the court may award.  *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004) (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)) ("[F]ederal courts are bound by the limitations set out in . . . § 1920."); *OMG, LP v. Heritage Auctions, Inc.*, 2015 WL 12672698, at *4 (N.D. Tex. Apr. 14, 2015) (Ramirez, J.), *rec. adopted*, 2015 WL 4006066 (N.D. Tex. June 30, 2015) (Lindsay, J.).

Section 1920 provides the types of costs that are recoverable:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

---

[5]The parties do not dispute that EEOC is a prevailing party.  Nor do the parties dispute that SkyWest timely filed its motion seeking review of EEOC's costs or that the court can review these costs.  Rule 54 provides that "[o]n a motion served within the next 7 days [after the clerk taxes costs], the court may review the clerk's action."  *See Nieman v. Hale*, 2015 WL 5896064, at *2 (N.D. Tex. Aug. 4, 2015) (Horan, J.) ("[A] district court, however, may review the Clerk's determination[.]"), *rec. adopted*, 2015 WL 5896125 (N.D. Tex. Oct. 6, 2015) (Boyle, J.).

[6]In reviewing the clerk of court's determination, the court applies a *de novo* standard. *Nieman*, 2015 WL 5896064, at *2.

(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In sum, a "district court may decline to award statutory costs, but may not award costs omitted from the statute." *Hoffman v. L & M Arts*, 2015 WL 1000864, at *7 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.).

B

SkyWest first objects to EEOC's claim for $8,698.55 for trial transcripts. SkyWest maintains that $618.75 of that amount "represents an additional condensed copy of the transcripts," which was unnecessary and is therefore unrecoverable. D. Br. (ECF No. 164) at 3. In response, "EEOC agrees to reduce its Bill of Costs by the $618.75 cost associated with condensed trial transcripts." P. Resp. (ECF No. 169) at 7. Accordingly, the court sustains SkyWest's objection and reduces EEOC's taxable costs for trial transcripts by $618.75.

C

SkyWest next objects to EEOC's claim for witness fees for Budd. SkyWest maintains that there is no statutory authority to tax it with the costs incurred by Budd "in attending her own trial." D. Br. (ECF No. 164) at 4. SkyWest contends that "EEOC's request for these costs must be denied," or, "[i]n the alternative, the Court should reduce the amount" from $400.80 to $200.40. *Id.* at 5. EEOC responds that Budd is entitled to witness fees for the

days on which she testified, but because it "mistakenly calculated fees for six days rather than [the] three days [on which she testified]," it "agrees to reduce its request . . . to $248.90." P. Resp. (ECF No. 169) at 4.

The court may tax as costs, *inter alia*, "[f]ees and disbursements for . . . witnesses." 28 U.S.C. § 1920(3); *see also* 28 U.S.C. § 1821. Generally, a party is not a "witness" for the purpose of taxable costs. *See, e.g.*, *McCoy v. Hernandez*, 1999 WL 38161, at *2 (N.D. Tex. Jan. 15, 1999) (Boyle, J.). A party may constitute a "witness," however, when she gives testimony. *See Witness*, Black's Law Dictionary (12th ed. 2024) ("Someone who gives testimony under oath or affirmation[.]"); *id.* (defining "party witness" as "[a] witness who is a plaintiff or defendant in the proceeding").

Accordingly, the court sustains SkyWest's objection to the extent EEOC erroneously claimed witness fees for days on which Budd did not testify. For the three days on which Budd did testify, EEOC may recover $200.40 ($120.00 in witness fees, $80.40 for mileage, and $48.50 for parking). Thus the court reduces EEOC's taxable costs for witness fees by the sum of $200.40.

## D

SkyWest also objects to EEOC's claim for subsistence fees for Budd, Michael Billotto ("Billotto"), and Carlos Avalo ("Avalo"). SkyWest maintains that these witnesses "did not require an overnight stay because the place of attendance was not far removed from their residences. [They] are all local to the Dallas Fort-Worth area[.]" D. Br. (ECF No. 164) at 5. EEOC responds that these subsistence fees are "mislabeled . . . .[p]arking and mileage .

- 25 -

. . witness fees reimbursable pursuant to Section 1920." P. Resp. (ECF No. 169) at 4. The record reflects that EEOC mistakenly labeled as subsistence fees taxable parking fees. Accordingly, the court overrules SkyWest's objection to EEOC's claim for subsistence fees for certain local witnesses.

## E

SkyWest objects to EEOC's claim for witness fees for Billotto on November 13, 2024 and November 18, 2024. SkyWest maintains that he did not testify on those dates. EEOC responds that it only claims witness fees for Billotto for the three dates on which he did testify: "November 14, 15, and 19, 2024." P. Resp. (ECF No. 169) at 5.

EEOC's Bill of Costs appears to claim that Billotto testified on November 13, 14, and 18, 2024. The trial record reflects, however, that Billotto testified on November 14 and 15. Accordingly, the court sustains SkyWest's objection to the extent EEOC erroneously claimed an extra day of witness fees for Billotto. For the two days on which Billotto testified, EEOC is entitled to $173.60 ($80.00 in attendance fees, $53.60 for mileage, and $40 for parking). Thus the court reduces EEOC's taxable costs for witness fees by $86.80.

## F

SkyWest next objects to EEOC's claim for costs of subpoenaing Avalo. SkyWest maintains that "Avalo is a current SkyWest employee who could have been produced by SkyWest without a subpoena; in fact, counsel for SkyWest arranged for Mr. Avalo's attendance on the date he was subpoenaed (November 13, 2024) and the date he actually testified (November 14, 2024)." D. Br. (ECF No. 164) at 6. EEOC responds that "Avalo's

subpoena was a reasonably necessary expense" because "Avalo was not a party to this action and not otherwise compelled to appear," and "EEOC could not reasonably rely on Defendant to ensure [his] presence given Defendant refused to make other employees available for EEOC's case in chief when asked." P. Resp. (ECF No. 169) at 5.

The court agrees with EEOC that the cost of subpoenaing Avalo was reasonably incurred. The record reflects that SkyWest did not cooperate with EEOC to make other witnesses within its control available for EEOC's case in chief. And to the extent EEOC should have made such request as to Avalo specifically, EEOC already voluntarily reduced its claimed costs for the subpoena by half.

Accordingly, the court overrules SkyWest's objection to EEOC's claim for subpoena costs.

G

SkyWest also objects to EEOC's claim for travel costs for the deposition of EEOC's expert witness, Dr. Kristin Samuelson ("Dr. Samuelson"). SkyWest maintains that "these costs have essentially already been paid and incurred by SkyWest" pursuant to the parties' prior agreement to "incur the costs associated with the depositions of each party's own expert." D. Br. (ECF No. 164) at 7. Because the hourly rate of SkyWest's expert witness was greater than that of EEOC's expert witness, "EEOC essentially saved costs through this agreement by counsel." *Id.* EEOC responds that the parties' prior agreement was not one "to forgo cost shifting from the prevailing party as Defendant now claims." P. Resp. (ECF No. 169) at 7. EEOC states that, to the extent SkyWest's expert charged a higher hourly rate

than its expert, "EEOC will gladly agree to discount the $50 additional dollars per hour that Defendant spent in this arrangement." *Id.*

The best evidence of the parties' agreement is EEOC's August 15, 2024 email to SkyWest. In pertinent part, it states: "[L]et this communication serve as our agreement that the parties (EEOC and SkyWest) will be responsible to compensate their own experts for costs and fees, including depositions and any other work and participation in the case." D. Br. (ECF No. 164-2) Ex. B at 1. EEOC plainly agrees to bear its own expert witness costs. Its present contention that its agreement was limited to the exigency of deposing the expert witnesses at the time is belied by its express agreement to bear its own expert witness costs for "any other work and participation in the case." *Id.*

Accordingly, the court sustains SkyWest's objection to EEOC's claim for travel costs for the deposition of EEOC's expert witness, Dr. Samuelson, and reduces EEOC's taxable costs for witness fees by $1,259.30.

H

SkyWest next objects to EEOC's claim for the costs of additional services related to deposition transcripts. SkyWest maintains that, to the extent these costs include additional services, such as the court reporter's fee, they are "not recoverable against SkyWest." D. Br. (ECF No. 164) at 7. SkyWest posits that the costs as to certain witnesses should be excluded entirely because "EEOC has failed to provide itemized invoice[s]" such that "SkyWest is unable to determine whether any additional services were included" for those witnesses. *Id.* at 7-8. In response, EEOC "agrees its Bill of Costs should be reduced to exclude costs

incurred for additional services and copies but disagrees that any such costs were charged as part of the deposition of [those witnesses whose invoices SkyWest alleges were not itemized]." P. Resp. (ECF No. 169) at 7.

The court declines to exclude entirely the costs of deposition transcripts for the witnesses for whom the invoices lack an itemized list of the additional services purchased; it is evident from the balance of the invoices that the absence of this itemization means that, for those witnesses, additional services were not purchased. The court sustains, however, SkyWest's objection to EEOC's claim for the costs of deposition transcripts to the extent SkyWest identified line items of additional services charged. The court therefore reduces EEOC's taxable costs for transcript fees by $1,597.75.

I

SkyWest objects to EEOC's claim for the costs of deposition transcripts of witnesses Krista Spurrier ("Spurrier"), Emilee Schwalger ("Schwalger"), John Hood, M.D. ("Dr. Hood"), Whitney Madsen ("Madsen"), and Budd. SkyWest maintains that "EEOC presents no explanation as to why a copy of these deposition transcripts was a necessity." D. Br. (ECF No. 164) at 8. EEOC responds that the copies were reasonably necessary because SkyWest indicated that it might call these witnesses at trial.

"[P]revailing parties are entitled to recover the costs of original depositions and copies under 28 U.S.C. § 1920(2) and § 1920(4) respectively, provided they were necessarily obtained for use in the case. . . . [A] deposition copy obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel, may be included in taxable

costs." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 285 (5th Cir. 1991) (footnotes and internal quotation marks omitted).

As to Spurrier, Schwalger, Dr. Hood, and Madsen, EEOC has not demonstrated that the deposition transcripts were obtained for use during trial or for trial preparation.  EEOC contends that it was necessary to obtain the transcripts for trial preparation because these deponents were identified as possible witnesses by SkyWest's pretrial disclosures.  But the record reflects that EEOC obtained the transcripts months *before* SkyWest filed its pretrial disclosures.  As to Budd, however, EEOC has demonstrated that the deposition transcripts were obtained for use during trial or for trial preparation.  As plaintiff-intervenor, Budd was always likely to testify as part of EEOC's case in chief.

Accordingly, the court sustains SkyWest's objection to EEOC's claims for the costs for deposition transcripts for Spurrier, Schwalger, Dr. Hood, and Madsen, and overrules SkyWest's objection as to the cost of Budd's deposition transcript.  The court therefore reduces EEOC's taxable costs for transcript fees by $1,197.50 (costs of relevant transcripts less the amount already reduced *supra* for additional services charged).

J

SkyWest contends last that "EEOC's limited success justifies only a minimal award of costs."  D. Br. (ECF No. 164) at 8.  SkyWest maintains that, "[b]ecause the EEOC's success was limited to half of its claims initially asserted," its costs should "be reduced by at least half, or by $14,783.99."  *Id.* at 9.  EEOC responds that there is no basis in law for limiting a prevailing party's recovery of costs based on its failure to prevail on every issue.

- 30 -

P. Resp. (ECF No. 169) at 3.

The court declines to reduce EEOC's taxable costs on the basis that it did not prevail on all of its claims. Even assuming *arguendo* that a reduction on this basis could be proper, SkyWest has not demonstrated how EEOC's not prevailing on its retaliation claim rendered specific claimed costs unnecessary.

K

Having considered SkyWest's objections to EEOC's costs, the court sustains in part and overrules in part the objections, reduces the taxable costs, and taxes EEOC's costs against SkyWest in the sum of $24,607.47.

*    *    *

For the reasons explained, the court grant's Budd's application for attorney's fees and costs to the extent set forth in this memorandum opinion and order, and sustains in part and overrules in part SkyWest's objections to EEOC's bill of costs.

**SO ORDERED**.

March 4, 2025.


_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 31 -